No. 86-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

GERALD NELSON,

        Plaintiff and Appellant,

-vs-

SAN JOAQUIN HELICOPTERS,

        Defendant and Respondent.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        W. Corbin Howard, Billings, Montana

    For Respondent:

        Morrow, Sedivy & Bennett; Ed Sedivy, Bozeman, Montana

_____

Submitted on Briefs:  May 14, 1987

Decided: September 3, 1987

Filed: SEP 3 - 1987.

_____
                Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Gerald Nelson appeals a judgment granting defendant San Joaquin Helicopters' Motion to Dismiss for lack of in personam jurisdiction from the Eighteenth Judicial District Court in Gallatin County.

Reversed and remanded.

The issue on appeal is whether the District Court erred by dismissing Nelson's complaint for lack of in personam jurisdiction.

In 1983, Nelson needed repairs performed on a helicopter. He first transported the helicopter to Garlick Helicopters, Inc. (hereinafter "Garlick"), a Montana corporation doing business in Hamilton, Montana. Garlick told him that they could not help him but recommended that he take the helicopter to San Joaquin Helicopters (hereinafter San Joaquin) which is a California corporation located in Delano, California. San Joaquin is not licensed to do business in Montana. Garlick had previously done business in California with San Joaquin and others but since January, 1982, Garlick has exclusively done business in the State of Montana. In 1981, Garlick and San Joaquin had entered into a contract whereby Garlick would deliver two helicopters and certain helicopter parts to San Joaquin. Garlick failed to deliver the parts San Joaquin ordered. San Joaquin admits making telephone calls from California to Garlick in Hamilton in an attempt to obtain various helicopter parts after Garlick moved to Montana. On some occasions, Garlick forwarded the requested parts to San Joaquin and on other occasions, Garlick did not. The parts never delivered by

Garlick from 1981 through November, 1983, apparently equaled or exceeded $10,000.00 in value.

Upon Garlick's suggestion, Nelson did in fact take the damaged helicopter to San Joaquin, made an agreement in California for its repair and did inspect it during its repair there. Subsequently, during the month of November, 1983, Nelson called San Joaquin from his home in Bozeman, Montana, and began negotiations by telephone with San Joaquin in California for them to purchase the helicopter because the cost of repairs was prohibitive. An agreement was reached sometime in November, 1983, by telephone wherein San Joaquin would purchase the helicopter for $10,000.00

Following their agreement, Nelson received a telephone call from San Joaquin informing him that he would be receiving a promissory note from Garlick who would in turn pay him the $10,000.00. The facts are disputed as to whether San Joaquin told Nelson that there would be no problem with the collectibility of the note; whether Nelson agreed to accept the note as full payment without recourse to San Joaquin; and whether Nelson was ever told that San Joaquin had been attempting to collect the amount they were owed from Garlick unsuccessfully for the previous two years.

San Joaquin prepared the promissory note which it forwarded to Garlick. Garlick signed the note. Nelson then transferred title of the helicopter to San Joaquin and the $10,000.00 promissory note was given to him by Garlick. Nelson eventually collected a total of $2,000.00 on the note from Garlick who now appears insolvent.

On August 7, 1985, Nelson filed a complaint against San Joaquin. San Joaquin moved the court to dismiss the complaint for lack of in personam jurisdiction. Interrogatories were sent and answered and Nelson was granted

leave to amend his complaint to include a negligent misrepresentation or fraud count.

On September 5, 1986, the District Court granted respondent's motion to dismiss and Nelson appealed.

Appellant Nelson contends that the District Court abused its discretion when it dismissed his complaint for lack of in personam jurisdiction over defendant San Joaquin.

He argues that the following four factors establish that Montana courts may properly exercise personal jurisdiction over San Joaquin. First, he claims San Joaquin had a contractual relationship with a Montana resident, Garlick Helicopters, for approximately two years prior to entering the contract which is at the heart of this controversy. He claims they communicated with Garlick during that time attempting to obtain performance due under their contract.

Second, Nelson argues his initial repair contract with San Joaquin was a direct result of the recommendation of Garlick, a Montana resident.

Third, he argues San Joaquin negotiated and entered into a contract to purchase the helicopter with Nelson while Nelson was here in Montana.

Fourth, he argues San Joaquin, by its own initiative, created a contractual relationship between two Montana residents, Garlick and Nelson, by arranging for the one Montana resident to pay off the California resident's debt to another Montana resident.

He claims these are sufficient minimum contacts with the State of Montana to warrant a holding of in personam jurisdiction.

The determination of in personam jurisdiction is a two step process. First, a determination must be made as to whether the party comes within the general jurisdiction of

- 4 -

the court or qualifies under the long arm jurisdiction statutes. Rule 4B(1), M.R.Civ.P., states:

> Rule 4B. Jurisdiction of persons. (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> (a) the transaction of any business within this state;
>
> (b) the commission of any act which results in accrual within this state of a tort action;
>
> (c) the ownership, use or possession of any property, or of any interest therein, situated within this state;
>
> (d) contracting to insure any person, property or risk located within this state at the time of contracting;
>
> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
>
> (f) acting as a director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

Neither party argues that the defendant's activities are so "substantial" or "systematic and continuous" to constitute finding defendant within the State so as to subject it to Montana's general jurisdiction statutes. International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

Nelson argues that although San Joaquin cannot be found within the State for general jurisdiction purposes, San

Joaquin is subject to the long arm jurisdictional statutes under Rule 4B(1), M.R.Civ.P. because it both transacted business within Montana and was responsible for the accrual of a tort within the State.

We have previously held that for purposes of a motion to dismiss the allegations in the complaint must be taken as true so as not to deny a plaintiff his day in court. Willson v. Taylor (Mont. 1981), 634 P.2d 1180, 38 St.Rep. 1606. The allegations in Nelson's complaint are taken as true for purposes of determining whether jurisdiction lies with this State. See Jackson v. Kroll, Pomerants and Cameron (Mont. 1986), 724 P.2d 717, 43 St.Rep. 1622. We hold these allegations are sufficient to establish business transactions and an action in tort in Montana.

The second step in making a determination of in personam jurisdiction is to ask whether the exercise of our long arm jurisdiction would be commensurate with defendant's due process rights. In Simmons v. State of Oregon (Mont. 1983), 670 P.2d 1372, 40 St.Rep. 1650, we adopted the following test developed by the Ninth Circuit Court of Appeals in Data Disc, Inc. v. Systems Assoc., Inc. (9th Cir. 1977), 557 F.2d 1280:

> 1. The non-resident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws.
>
> 2. The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> 3. Exercise of jurisdiction must be reasonable.

Simmons, 670 P.2d at 1378.

As we stated in Jackson v. Kroll, 724 P.2d at 721, the examination of the following factors is necessary to

- 6 -

determine what is a reasonable exercise of jurisdiction in such circumstances:

1. The extent of defendant's purposeful interjection into Montana;
2. The burden on defendant of defending in Montana;
3. The extent of conflict with the sovereignty of defendant's state;
4. Montana's interest in adjudicating the dispute;
5. The most efficient resolution of the controversy;
6. The importance of Montana to plaintiff's interest in convenient and effective relief; and
7. The existence of an alternative forum.

See Taubler v. Giraud (9th Cir. 1981), 655 F.2d 991, 994, and Simmons, 670 P.2d at 1383-1385, 40 St.Rep. at 1661-1664.

We hold that an exercise of in personam jurisdiction over San Joaquin would not violate its due process rights under these circumstances.

A review of the record indicates the defendant's activity cannot properly be summarized by simply stating as the lower court did, that there were a few phone calls back and forth between the parties. The defendant's activities were more extensive and were sufficient to meet the "minimum contacts" standard required by this Court in Simmons, supra, in keeping with the federal courts holding on this issue. Pennoyer v. Neff (1877), 95 U.S. 714, 24 L.Ed 565; World Wide Volkswagen v. Woodson (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490.

San Joaquin spent from 1981 to 1983 attempting to collect a debt from Garlick after Garlick moved its enterprise to Montana. Telephone calls were made to Garlick in Montana. Garlick shipped parts from time to time to California. San Joaquin interjected itself into Montana by its debt collection practices and continuing commercial relationship with Garlick.

- 7 -

Further the defendant in California did negotiate over the telephone with Nelson in Montana and eventually agreed to purchase the helicopter when the helicopter was in California for repairs. San Joaquin then interjected itself into Montana by arranging a contractual relationship between Nelson and Garlick in conjunction with its earlier agreement with Nelson. Consequently, the defendant was involved in three different contractual relationships with two different Montana residents, one of which is the subject of the underlying controversy.

In applying the Jackson v. Kroll, factors to this case to determine reasonable exercise of jurisdiction we find this activity indicates a purposeful interjection into Montana by San Joaquin.

No conflict with the State of California is evident in exercising jurisdiction over San Joaquin, although there will be some burden on defendant in defending in Montana.

The State of Montana clearly has an interest in adjudicating an alleged assignment of a bad debt in a commercial transaction from one Montana resident to another. Nelson does not appear to base his claims on the work done in California on his helicopter but rather bases them on San Joaquin's alleged failure to pay an assignment of a Montana bad debt.

Most witnesses, except the owner of San Joaquin, are located in Montana and it appears Montana would be the most efficient location for trial.

We therefore hold that the State of Montana may properly exercise jurisdiction over defendant San Joaquin through application of its long arm jurisdiction statutes.

Reversed and remanded.

_____
                 Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
           Justices

- 9 -