No. 89-309

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF THE ESTATE OF
MARY ELEANOR WINSTON DUCEY,
Deceased.

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

C. Kathleen McBride; Johnson, Skakles & Kebe, Butte,
Montana
James W. Erbeck; Jones, Jones, Close & Brown, Las Vegas,
Nevada

For Respondent:

Joseph Nappi, Jr. and Carl Oreskovich; Hemovich, Nappi,
Oreskovich and Butler, Spokane, Washington

Submitted on Briefs: Dec. 14, 1989

Decided: February 6, 1990

Filed:

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

This appeal involves a petition to transfer the assets of a Nevada trust to an estate being probated in the Montana Second Judicial District, County of Butte-Silver Bow. First Interstate Bank of Nevada, N.A. (FIBN), respondent below, appeals Order of the District Court ordering FIBN to transfer and deliver all assets of the "Trust of Mary Eleanor Winston Ducey" to the petitioner, Michael F. Keyes, as Personal Representative of the Estate of Mary Eleanor Winston Ducey (the Estate), to be distributed in accordance with the will of the decedent. We reverse the District Court's Order and order the petition dismissed for lack of jurisdiction.

FIBN raises the following issue on appeal:

(1) Did the District Court have jurisdiction to order the transfer of assets from a foreign trust located in Nevada to the probate estate in Montana?

FIBN raised other issues but the above issue disposes of this appeal.

In October of 1969 the trustors Mary E. Ducey and Winfield S. Ducey, husband and wife, created an inter vivos trust in Las Vegas, Nevada, where they resided. The original trustee was the First National Bank of Nevada Reno, Nevada. Two amendments to the trust were executed, the first a few

2

days after the trust was created and the second by Mary Ducey after the death of her husband Winfield.

The Trust provided that during the lifetime of the trustors or a surviving trustor, the income from the trust would be paid to the trustors or the surviving trustor. Upon the death of the surviving trustor, the Trust provided for disposition of the assets of the trust estate.

Mary Ducey executed her last will and testament April 13, 1987. The will provided for the distribution of the estate, and included devises to various parties different from the distributions to other parties listed in the trust agreement. The will also included a revocation of any and all prior wills made by the testatrix, but nowhere in the will is there any mention of the Nevada trust.

Shortly after her husband's death in 1970, Mary Ducey moved to Butte, Montana where she resided until her death on August 2, 1987. In March of 1988, FIBN filed a Petition for Confirmation of Appointment of Trustee and Request for Instructions before the Nevada Probate Court to effect disposition of the trust, consisting of approximately $100,000.00 in liquid assets, pursuant to the terms of the trust. The Estate of Mary Ducey through its personal representative Michael Keyes, opposed the petition. On February 24, 1989 the Nevada Probate Commissioner dismissed the petition allegedly on the grounds that the Petition

3

attempted to determine title to the trust assets and ordered FIBN to file a complaint in Nevada District Court. On March 29, 1989, the Estate of Mary Ducey filed a Petition for Transfer of Trust Assets of Estate in the Montana Second Judicial District Court, County of Butte-Silver Bow. FIBN alleges that on April 6, 1989, it filed its complaint for declaratory relief in the Eighth Judicial District Court, Clark County, Nevada to determine the validity of the trust. FIBN alleges that said complaint is still pending in Nevada District Court.

On April 24, 1989 FIBN filed its "Request for Special Appearance and Motion to Quash Petition to Transfer Assets of Foreign Trust." The matter was heard before the Montana Second Judicial District Court on April 26, 1989. FIBN made a "special appearance" solely to oppose the Estate's petition on jurisdictional grounds. After a hearing on the matter, where FIBN participated only with respect to the jurisdiction issue, the Court declared that its jurisdiction of the probate of the decedent's will included jurisdiction over the trust assets and subsequently ordered FIBN to deliver the trust assets over to the estate. FIBN now appeals this order and raises the issue listed above.

I

"Jurisdiction as applied to courts is the power or capacity given by law to a court to entertain, hear and

4

determine the particular case or matter." State ex rel Johnson v. District Court (1966), 147 Mont. 263, 267, 410 P.2d 933, 935. Jurisdiction can affect either persons (jurisdiction in personam), or interests in property (jurisdiction in rem or quasi in rem).

## I. In Rem Jurisdiction

The basis of in rem jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum state. Overby v. Gordon (1900), 177 U.S. 214, 222, 20 S.Ct. 603, 606, 44 L.Ed. 741, 745. This principle is also codified in the Uniform Probate Code, § 72-1-201, MCA, which provides that the Code applies to "the property of nonresidents located in this state or property coming into the control of a fiduciary who is subject to the laws of this state . . ." Section 72-1-201(2), MCA.

Here, the property in question is not located within the forum state. In this regard, the case at bar is nearly identical to Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, where the United States Supreme Court reversed a Florida Supreme Court decision which held that authority over the probate and construction of its domiciliary's will, under which the assets in question might pass, was sufficient to confer the requisite jurisdiction over assets in a foreign trust. The Court stated:

5

> . . . jurisdiction cannot be predicated upon the contingent role of this Florida will. Whatever the efficacy of a so-called "in rem" jurisdiction over assets admittedly passing under a local will, a State acquires no *in rem* jurisdiction to adjudicate the validity of *inter vivos* dispositions simply because its decision might augment an estate passing under a will probated in its courts . . . The fact that the owner is or was domiciled within the forum State is not a sufficient affiliation with the property upon which to base jurisdiction *in rem*.
>
> . . . so far as it purports to rest upon jurisdiction over the trust assets, the judgment of the Florida Court cannot be sustained.

*Hanson*, 357 U.S. at 248-250, 78 S.Ct. at 1237-1238, 2 L.Ed.2d at 1294-1296.

At the conclusion of the hearing on the petition to transfer the trust assets, the District Court judge ruled:

> Well, this court has the jurisdiction of the probate of her will and the distribution of her property.
> And counsel is instructed to prepare an Order directing the Bank in Nevada to deliver up the assets to the estate.
> We will execute the will here.

Under the rule of *Hanson*, the District Court would not have in rem jurisdiction over the trust assets in Nevada by virtue of the will being probated in Montana, thus the District Court's above ruling is in error.

## II. *In Personam* Jurisdiction

The determination of in personam jurisdiction is a two step process. *Nelson v. San Joaquin Helicopters* (1987), 228 Mont. 267, 270, 742 P.2d 447, 449. First, it must be

6

determined whether the party comes within the general jurisdiction or long arm jurisdiction of the court. Nelson, 742 P.2d at 449. The second step, should the court have jurisdiction, is to ask whether the exercise of jurisdiction would be commensurate with the party's due process rights. See Simmons v. State of Oregon (1983), 206 Mont. 264, 670 P.2d 1372; Jackson v. Kroll (1986), 223 Mont. 161, 724 P.2d 717.

The applicable statute governing in personam jurisdiction is Rule 4B(1), M.R.Civ.P., which provides in part:

> Rule 4B. Jurisdiction of persons. (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> (a) the transaction of any business within this state;

General jurisdiction applies to cases where the cause of action is "distinct from" the defendant's activity in the forum, see e.g. State of North Dakota v. Newberger (1980), 188 Mont. 323, 613 P.2d 1002. When general jurisdiction is asserted it is evaluated by the "minimum contacts" due process standard required by International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

7

Here, the cause of action is not distinct from FIBN's activity in the forum, rather it arises directly from the alleged activity within the forum of FIBN regarding the Mary Ducey trust. The record does not contain substantial evidence indicating that FIBN's activities are so "substantial" or "systematic and continuous" to find that FIBN is "found within" the State of Montana for purposes of general jurisdiction. Rule 4B(1), M.R.Civ.P., International Shoe, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

We turn to the issue of whether FIBN as trustee falls under the longarm jurisdiction of the court. The applicable portion of the longarm statute is subsection (a), which subjects any person who transacts any business within this state to the jurisdiction of Montana courts. Rule 4B(1), M.R.Civ.P. The estate argues that FIBN transacted business in Montana based on the following: (1) Mary Ducey was a resident of Montana, (2) periodic trust payments were made to her throughout her Montana residency, (3) FIBN amended the trust document and presumably would do so again at her request while Mary Ducey was a Montana resident, (4) at her request, the Bank allegedly negotiated changes in the trust telephonically with Mary in Montana to allow the assets to go to certain beneficiaries she desired in Montana, (5) FIBN allegedly instructed her to draft a will and send a copy to FIBN to allow the trust assets to pass under the will, and

(6) FIBN "apparently" received permission from Mary Ducey, a Montana resident, to act as a successor trustee for First National Bank of Nevada or its successor.

Hanson v. Denckla, supra, also controls the disposition of the in personam jurisdiction issue in this case. The estate attempts to distinguish Hanson as non-controlling on the basis of the Supreme Court's decision in McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. In McGee, the defendant Texas insurance company agreed to assume the insurance obligations of the plaintiff's original Arizona insurer. The nonresident defendant insurance company then solicited a re-insurance agreement with the plaintiff, a resident of California. The Supreme Court held that the California court had jurisdiction based on the solicitation of the re-insurance agreement. In Hanson the Court distinguished McGee from cases involving the validity of a trust, stating:

> The cause of action in this case is not one that arises out of an act done or transaction consummated in the forum state. In that respect, it differs from McGee . . . [T]his action involves the validity of an agreement that was entered without any connection with the forum State. The agreement was executed in Delaware by a trust company incorporated in that State and a settlor domiciled in Pennsylvania. The first relationship Florida had to the agreement was years later when the settlor became domiciled there, and the trustee remitted the trust income to her in that State. From Florida Mrs. Donner carried on several bits of trust administration that may be compared to the mailing of premiums in McGee. But the record

9

> discloses no instance in which the <u>trustee</u>
> performed any acts in Florida that bear the same
> relationship to the agreement as the solicitation
> in McGee . . .

<u>Hanson</u>, 357 U.S. at 251-252, 78 S.Ct. at 1238-1239, 2 L.Ed.2d at 1296-1297. Like the trustee in <u>Hanson</u>, FIBN did not conduct any business in the forum state availing itself of the benefits and protections of Montana's laws. FIBN made some payments of trust income to Mrs. Ducey in Montana. FIBN allegedly responded to requests made by Mrs. Ducey and allegedly participated in negotiations initiated by and at the request of Mrs. Ducey. From Montana, Mrs. Ducey carried on several bits of trust administration that may be compared to the mailing of premiums in <u>McGee</u>. However, the record does not indicate that FIBN as trustee performed any acts in Montana that bear the same relationship to the trust agreement as the solicitation of re-insurance in McGee. <u>See</u> <u>Hanson</u>, 357 U.S. at 252, 78 S.Ct. at 1239, 2 L.Ed.2d at 1297.

The estate argues that <u>McGee</u> is applicable because FIBN "apparently" received permission from Mary Ducey, a Montana resident, to act as successor trustee to First National Bank of Nevada, in Reno, Nevada. Hence, the estate argues that FIBN could only have assumed the role of trustee by seeking Mary Ducey's permission or appointment while she was domiciled in Montana. The estate then maintains that the "sparsity" of the record with regard to how FIBN became

10

successor trustee is due to the late hour at which FIBN objected to the petition to transfer the assets.

What the estate refers to as a "sparsity" in the record would be better described as a complete lack of any evidence or testimony in the record as to how FIBN became successor trustee. Likewise, this argument analogizing the solicitation in McGee to the "apparent" solicitation for appointment as successor trustee is also absent from the record below. There is simply no evidence to support this argument. The record contains no evidence that FIBN performed any acts equivalent to the transaction of business in Montana that bear the same relationship to the trust agreement as the solicitation in McGee. Hanson, 357 U.S. at 252, 78 S.Ct. at 1239, 2 L.Ed.2d at 1297. Thus the District Court lacked both in rem jurisdiction over the assets of the foreign trust and in personam jurisdiction over FIBN as trustee.

### III.

Because the court lacked jurisdiction over FIBN and the trust, we need not dispose of the other issues raised on FIBN's appeal. We do note that there is no longer any distinction between a general or special appearance in Montana. Foster Apiaries, Inc. v. Hubbard Apiaries, Inc. (Mont. 1981), 630 P.2d 1213, 1215, 38 St.Rep. 1025, 1027-1028. Rule 12 M.R.Civ.P. eliminates the need for the

11

traditional classifications of general and special appearances.

The District Court having no jurisdiction to entertain, hear, and determine this matter, the Order of the District Court to transfer the assets of the Nevada trust is vacated.

REVERSED and the Petition is DISMISSED.

_____
                                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

12

Justice William E. Hunt, Sr., dissenting:

I dissent. The dispute in this case concerns the validity of a trust administered by First Interstate Bank of Nevada, N.A. (FIBN), as trustee. FIBN, by accepting the appointment as trustee of a trust established by a Montana resident, transacted business in this state, thereby subjecting it to jurisdiction under the longarm statute, Rule 4B(1)(a), M.R.Civ.P.

The present case is not on all fours with Hanson v. Denckla (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, as the majority would have us believe. In Hanson, a Pennsylvania resident executed a trust instrument in Delaware naming a Delaware trust company as trustee. The trustor then moved to Florida, where she died. The Supreme Court held that the Delaware trustee could not be subject to the jursidiction of the Florida courts when jurisdiction would be based solely upon the unilateral actions of the trustor.

In the present case, Nevada residents executed a trust instrument in Nevada naming First National Bank of Reno, Nevada, as trustee. In 1970, one of the trustors died and the surviving trustor moved to Montana. In 1979, after the trustor had resided in Montana for nine years, FIBN accepted the appointment as successor trustee to the trust.

Unlike Hanson, jurisdiction in the present case is not based solely upon the unilateral actions of the trustor. Rather, the actions of the trustee in this case are akin to the actions of the insurance company in McGee v. International Life Ins. Co. (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Both the trustee in this case and the insurance company in McGee purposefully interjected themselves into the forum state, availing themselves of the

13

benefits and protections of the forum's laws. FIBN purposefully interjected itself into this state in 1979 when it accepted the appointment as trustee to the Ducey trust.

Apparently, FIBN became the successor trustee through a merger with First National in 1979. Although the trust agreement contained a provision regarding the right of the trustee to resign, it made no provision regarding the automatic transfer of trusteeship upon the merger of the trustee bank with another. The resignation clause merely provided as follows:

> The right is reserved by and granted to the Trustee, upon notice in writing to the Trustors during their lifetime or to the surviving Trustor during his or her lifetime, to surrender this trust, and upon such election by the Trustee, the Trustors shall accept the resignation of the Trustee and shall appoint a new Trustee, and in the event of the failure, refusal or inability of the Trustors so to do, the Trustee, at the cost and expense of the trust estate, may secure the appointment of a new Trustee in the manner provided by law.

From this clause, we can surmise one of two facts, both pointing toward jurisdiction. Either FIBN solicited the trustee appointment from the trustor in Montana or First National appointed FIBN to act as trustee in its stead. In either case, FIBN accepted the appointment knowing that the trustor was a Montana resident.

FIBN should have reasonably anticipated being haled into court in Montana. It accepted the appointment as trustee for a Montana resident's trust, which named Montana residents as beneficiaries. It forwarded periodic trust payments to the trustor in Montana. It negotiated over the phone with the trustor in Montana, allegedly instructing her to draft a will and send it a copy to allow the trust assets to pass under

the will--the very subject of these discussions form the basis of the present controversy.

Montana has an interest in assuring that the wishes of individuals who die while residents of this state are carried out. Furthermore, as the state where the will is probated, this state is the most efficient forum for the resolution of the present controversy.

I would affirm the District Court on this issue.

_____
                Justice


I agree with the dissent of Justice William E. Hunt, Sr.

_____
                Justice