No. 90-321

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

EDSALL CONSTRUCTION COMPANY, INC.,

Plaintiff and Respondent,

-vs-

LARRY D. ROBINSON and KRISTEN ROBINSON
doing business as IMPERIAL TILE,

Defendants and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Michael J. Lilly; Berg, Lilly, Stokes, Andriolo,
Tollefsen & Schraudner, Bozeman, Montana

For Respondent:

Gary L. Walton; Poore, Roth & Robinson, Butte,
Montana

Submitted on Briefs: October 11, 1990

Decided: January 24, 1991

FILED

JAN 24 1991

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

Plaintiff, Edsall Construction Co., brought this action in the District Court of the Eighteenth Judicial District, Gallatin County, against defendants, Larry and Kristen Robinson, for damages arising out of an oral sub-bid contract. The District Court denied defendants' motions to dismiss for lack of personal jurisdiction, and after hearing testimony, awarded plaintiff damages in the amount of $15,114. From that judgment, the defendants appeal. We reverse.

Edsall is a Montana corporation with its principal place of business in Bozeman, Montana. Edsall is a general contractor primarily engaged in the construction or rehabilitation of buildings.

Larry and Kristen Robinson are husband and wife, and reside in Parowan, Utah. Larry is the sole proprietor of Imperial Tile and operates the tile laying business out of his own home.

In July, 1988, Edsall, in preparing a bid on a federal construction project known as the Rehabilitation of Bryce Canyon Lodge, had its representatives contact various subcontractors to solicit bids for the project. The project was located in Bryce Canyon National Park, Utah and Edsall determined it best to solicit bids from Utah contractors because of the savings involved in terms of travel and proximity to the job site.

On July 26, 1988, a representative of Edsall called the listing for Imperial Tile in Parowan, Utah to inquire whether

Imperial Tile was planning to submit a bid for the tile work on the project. Kristen answered the call and informed the representative neither she nor Larry had any prior knowledge of the project. Kristen was advised as to where she could receive a copy of the plans and specifications for the project, and acquired the documents later that day. When Larry arrived home that evening, Kristen conveyed the information to him. Larry spent the remainder of the evening preparing a bid for the tile work and concluded his preparations after his wife had gone to bed. He left for a job site early the next morning, July 27, 1988, and left Kristen a note requesting her to call in a bid of $24,500. Kristen called in the bid to Edsall as the note instructed on July 27. Wayne Edsall, president of Edsall Construction, called Kristen back later that day to find out whether the bid included certain proposed additions. Subsequent to the conversation with Kristen, Edsall used Imperial Tile's bid in determining their proposed bid. The bid opening was held the afternoon of July 27, 1988, in Bryce Canyon National Park, Utah.

On August 3, 1988, Edsall called Kristen and informed her that Imperial Tile had been awarded the tile bid for the project. The following morning, August 4, 1988, Larry called Edsall and spoke with Edsall's estimator. The estimator advised Larry that there were two other tile bids, both considerably higher (one for $39,614 and the other for $47,800). Upon learning the amounts of the other tile bids, Larry felt he must have made a mistake and recalculated his bid. He testified that his bid should have been closer to

3

$42,000. Later that morning, Kristen called Edsall to inform Edsall that Imperial Tile's bid was a mistake, and that Imperial Tile could not do the job.

On August 11, 1988, the Bryce Canyon Lodge Rehabilitation Project was awarded to Edsall as low bidder and Edsall subsequently entered into a contract with the government on August 16, 1988.

On September 1, 1988, Edsall received a letter from Imperial Tile confirming Larry's calculation error and refusal to perform.

Edsall eventually subcontracted with the next lowest bidder ($39,614) to perform the tile work on the project. Edsall brought an action in the above District Court, seeking damages for the difference between $24,500 and $39,614, or the sum of $15,114. Trial was held on January 17, 1990 without a jury. The District Court entered it Findings of Fact and Conclusions of Law on January 31, 1990, and ordered the Robinsons to pay to Edsall the sum of $15,114.

The dispositive issue presented on appeal is whether the District Court erred in exercising personal jurisdiction over the appellants.

Montana's long arm personal jurisdiction statute is found in Rule 4B of the Montana Rules of Civil Procedure and provides the essential criteria to determine whether Montana jurisdiction exists under these circumstances. Under Rule 4B, M.R.Civ.P., personal jurisdiction can be acquired in two ways, by general jurisdiction or long arm jurisdiction. When a party is physically present within Montana or its contacts are so pervasive that it is "found

4

within the state of Montana," Montana has general jurisdiction. Long arm jurisdiction exists when a party exercises any of the long arm statutes enumerated in Rule 4B(1), M.R.Civ.P.

This Court has consistently utilized a two step process in analyzing a question of whether personal jurisdiction can be exercised by Montana courts. May v. Figgins (1980), 186 Mont. 383, 607 P.2d 1132; Simmons v. State (1983), 206 Mont. 264, 670 P.2d 1372; Nelson v. San Joaquin Helicopters (1987), 228 Mont. 267, 742 P.2d 447. The first step is to determine whether there exists any personal jurisdiction, either by way of being "found" in Montana or by way of the long arm statutes. If it is determined that such jurisdiction does not exist, any further analysis becomes unnecessary. On the other hand, if it is determined that personal jurisdiction exists by way of the long arm statutes then the second step requires a determination of whether exercising such jurisdiction would be commensurate with the defendant's due process rights. See Nelson at 271, 742 P.2d at 449.

Using the first step to analyze the circumstances presented at bar, we begin with Rule 4B(1), M.R.Civ.P., which provides:

> Rule 4B. Jurisdiction of persons. (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> (a) the transaction of any business within this state;
>
> (b) the commission of any act which results in accrual within this state of a tort action;

5

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

(d) contracting to insure any person, property or risk located within this state at the time of contracting;

(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as a director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

To be "found" within Montana it is necessary that the defendants' activities are "substantial" or "systematic and continuous." International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; In Matter of the Estate of Ducey (1990), 241 Mont. 419, 787 P.2d 749. Imperial Tile's activities in submitting a bid with Edsall are clearly not sufficient to satisfy this criteria and invoke general jurisdiction over the Robinsons.

We then turn to the question of whether long arm jurisdiction exists. The District Court concluded that Rule 4B(1)(a), M.R.Civ.P., confers upon Montana courts such jurisdiction. That section of the statute subjects persons transacting "any business within this state" (emphasis added) to Montana long arm jurisdiction.

This Court stated in Simmons that a nonresident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana. Simmons, at 279, 670

P.2d at 1380. The only association Imperial Tile has with Montana is that it entered into a contract with Edsall, a resident of Montana. In Simmons we also stated that

> [i]nterstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a "contact" for justifying the exercise of personal jurisdiction.

Simmons, at 280, 670 P.2d at 1380. Imperial Tile's "interstate communication" in the form of a telephone call to submit a bid on a contract to be entirely performed in another state, does not by itself constitute the "transaction of business within this state" under Rule 4B(1)(a), M.R.Civ.P., particularly in light of the fact that Imperial Tile was sought out by Edsall. It was representatives of Edsall who initiated the contact with Imperial Tile, and although Imperial Tile was under no obligation to submit a bid, initial contact had been made and business relations had commenced at that point.

The contract was to be performed in Utah, the bidding took place in Utah, and the initial contact was made by Edsall, soliciting a bid from Imperial Tile, a business located in Utah. The only tie this suit has to Montana is that it is Edsall's home state, and that alone does not justify a determination that Montana is the proper forum for this dispute.

Respondent cites McGee v. Riekhof (D. Mont. 1978), 442 F.Supp. 1276, in support of its argument that Imperial Tile has subjected itself to Montana jurisdiction. In McGee, a Utah physician received a telephone call from his Montana patient's wife and, during the course of the conversation provided medical advice to

7

the Montana patient, which eventually led to a medical malpractice claim against the Utah physician. Personal jurisdiction over the doctor was found to exist in Montana. The long arm jurisdiction in that case arose out of Rule 4B(1)(b), M.R.Civ.P., which addresses tort actions. We are not dealing with a tort action in the case at bar.

We also distinguish this Court's earlier decision in Nelson, as future guidance for the district courts in personal jurisdiction matters. In Nelson, the respondent, San Joaquin Helicopters, was a California corporation not licensed to do business in Montana. However, this Court found San Joaquin Helicopters subject to the in personam jurisdiction of Montana. Unlike the case at bar, the California corporation had on going business dealings with two different Montana residents. The incident which gave rise to the lawsuit involved a promissory note that had been passed from the California corporation to the Montana plaintiff, via a third party Montana business. All three parties had been involved in continuing business relations prior to the action being brought. As we stated in Nelson, the record there indicated the California corporation's activity was more than "a few phone calls back and forth between the parties." Nelson at 272, 742 P.2d at 450. The situation here is simply that, "a few phone calls." Although the phone calls may have amounted to a contract, the contract was to be performed in Utah and it did not have any nexus with this state except for the fact that one party was a Montana resident. The State of Utah is clearly a more appropriate forum for the

8

litigation of this matter.

We hold that the first step is not satisfied and Montana does not have either general jurisdiction or long arm jurisdiction over the Robinsons. Such being the case, our consideration of step two and the defendants' due process rights becomes unnecessary. The judgment of the District Court is reversed and the cause is remanded to the District Court for dismissal of the case.

_____
Justice

We concur:

_____

_____

_____
Justices

9

Justice Fred J. Weber dissents as follows:

While I agree with the majority as to the applicable rules, I disagree with the application to the facts of this case.

The critical fact which appears to tilt the majority to deny jurisdiction is that the contract here was "to be entirely performed in another state." The majority also emphasizes that the bidding by the plaintiff took place in Utah. That element did not involve the defendants. I conclude both of these factors are irrelevant under the present facts.

We are not dealing with a contract between the plaintiff and defendant which was performed in Utah. It is essential to note that the contract between the plaintiff and defendant was never performed. The contacts between the parties are essentially the following: 1) entry into a contract over the telephone, with the plaintiff in Montana and the defendant in Utah; 2) telephone advice by the defendant from Utah to the plaintiff in Montana that the defendant would not fulfill his contract.

The contacts between these two parties are basically the same in both Montana and Utah. The facts demonstrate an uncompleted contract with the only issues being whether there was in fact a contract, and a breach by the defendant's failure to perform that contract. Even in proof at trial, it appears there will be substantially similar questions whether the case is tried in Montana or Utah. The plaintiff's witnesses are in Montana and the defendant's witnesses are in Utah.

The majority opinion distinguishes the present case from

10

Nelson v. San Joaquin Helicopters (1987), 228 Mont. 267, 742 P.2d 447. The majority indicates that in <u>Nelson</u> the court found in personam jurisdiction. The majority emphasizes that the California corporation had ongoing business dealings with two different residents. As I read <u>Nelson</u> I am unable to make the same distinction. Without intending to do so, I believe the Court has created a real dilemma as to whether either Montana or Utah has jurisdiction in the present case. If the contacts in Montana are not sufficient for the Montana court to claim jurisdiction, I fail to understand how there will be additional contact in Utah to assist that court in reaching a conclusion that it should take jurisdiction. Under the facts of this case, it seems far more appropriate to conclude that either Montana or Utah can take jurisdiction because the contacts in each state are substantially identical.

The procedure used by the majority has caused unnecessary significant expenses to the parties. The case has been tried and judgment entered here in Montana. The majority has nullified that and required the plaintiff to go to Utah and try the same case over again. Where a case has been tried to judgment, we should not be so casual in our reversal.

I would affirm the District Court.

_____
Justice

11