No. 03-287

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 286

B.T. METAL WORKS and DARYL BOYD, D.B.A.,

       Plaintiff and Appellant,

   v.

UNITED DIE and MANUFACTURING CO.,

       Respondent and Respondent.


APPEAL FROM:    District Court of the Fifteenth Judicial District,
                     In and for the County of Roosevelt, Cause No. DV 2002-46
                     The Honorable Richard A. Simonton, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

              Terrance L. Toavs, Attorney at Law, Wolf Point, Montana; John Fredericks III, Attorney at Law, Louisville, Colorado

       For Respondent:

              Laura Christoffersen, Christoffersen & Knierim, Culbertson, Montana


Submitted on Briefs:  September 18, 2003

Decided:  October 19, 2004


Filed:

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1	Daryl Boyd, d/b/a B.T. Metalworks ("Boyd"), appeals from an Order of the Montana Fifteenth Judicial District Court, Roosevelt County, in which the court dismissed his lawsuit against United Die and Manufacturing Company ("United Die") for lack of personal jurisdiction. Boyd, a Montana resident, filed a complaint against United Die, an Ohio corporation, alleging that United Die intentionally interfered with a business relationship; breached its fiduciary duty to maintain confidentiality of cost information and drawings; and misappropriated Boyd's trade secrets, including cost information, drawings, and product designs. The District Court concluded that, under Rule 4B, M.R.Civ.P., it did not have general or specific jurisdiction over United Die. We reverse and remand.

## ISSUES

¶2	1. Did the District Court err when it concluded that United Die was not subject to the general jurisdiction of the Montana courts?

¶3	2. Did the District Court err when it concluded that United Die was not subject to specific jurisdiction under Montana's long-arm statute?

¶4	Because we have concluded that Issue Two is dispositive, we do not address Issue One.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5	Since 1989, Boyd has entered into various contracts with A&S Tribal Industries ("A&S"), a corporation chartered under the laws of the Assiniboine and Sioux Tribes of the Fort Peck Reservation with a principal place of business in Poplar, Montana, on the Fort

2

Peck Reservation. Under the contracts, Boyd supplied A&S with metal latches for medical chests which A&S manufactures.

¶6 Boyd was located in Tennessee at the time he began his relationship with A&S. He contracted with United Die to produce the latches in accordance with drawings and other technical information which Boyd supplied to United Die, and from which United Die tooled three dies at Boyd's direction for the manufacture of the latches. Boyd paid United Die approximately $22,000 for the tooling and dies, which were owned by Boyd but kept at United Die's manufacturing facility in Ohio. United Die shipped the latch parts to Boyd, who assembled the latches before forwarding them to A&S.

¶7 In 1993, Boyd relocated to Helena, Montana. In 1996, Boyd entered into a new contract with A&S, and Boyd changed his arrangement with United Die. United Die began to assemble the latches and ship them directly to A&S. Under this arrangement, United Die sent its invoices to Boyd and the latches to A&S. From 1996 until 2001, United Die fulfilled twenty similar purchase orders for Boyd.

¶8 Boyd alleges that in 1997, United Die included a copy of its invoice in a shipment to A&S. The invoice set forth Boyd's cost information and enabled A&S to calculate Boyd's profit margin. Soon after this incident, a United Die representative called Boyd and offered to buy his latch tooling, and pay Boyd a commission on further latch sales to A&S. Boyd refused, and his business relationship with United Die continued in the same manner as it had been conducted since 1996.

3

¶9 In early 2001, Boyd removed his tooling and dies from United Die's plant and contracted with another manufacturer for production of the latches. On April 19, 2001, United Die allegedly contacted A&S and stated its intention to bid on A&S's next latch manufacturing contract. A&S requested a formal quote; United Die submitted one that afternoon. In October 2001, A&S contacted United Die to inquire if its price quote from April still applied. United Die stated that it would honor the price it quoted in April. A&S also contacted Boyd and requested a price quote. A&S ultimately awarded the new contract to United Die because of its lower quoted price.

¶10 Boyd alleges that United Die wrongfully retained copies of the drawings which he had submitted to them for the construction of his tooling and dies, and that United Die used those drawings to construct new tooling and dies to manufacture latches for A&S. He filed a Complaint in the Fifteenth Judicial District Court, Roosevelt County, alleging Intentional Interference with a Business Relationship, Breach of Fiduciary Duty to Maintain Confidence, and Misappropriation of Trade Secrets.

¶11 United Die filed a Motion to Dismiss and Brief in Support citing lack of personal and subject matter jurisdiction. Pursuant to Rule 4B, M.R.Civ.P., it claimed that general jurisdiction did not exist because United Die did not have continuous and systematic contacts with Montana; and that specific jurisdiction did not exist because Boyd initiated contact with United Die at United Die's place of business in Ohio.

¶12 The District Court concluded that general jurisdiction did not exist over United Die because the company was not "found within" Montana, and that United Die had insufficient

4

contacts with Montana for the state to exercise specific jurisdiction under its long-arm provisions. In reaching this conclusion, the District Court found that Boyd's relationship with United Die began when Boyd was a Tennessee resident, that Boyd provided United Die with the drawings necessary for the tooling in Ohio, that the manufacturing process was begun and completed in Ohio, and that if United Die has wrongfully retained Boyd's drawings, it has done so in Ohio.

¶13 The District Court concluded that it had neither general nor specific jurisdiction over United Die. From this Order, Boyd timely appeals.

## STANDARD OF REVIEW

¶14 We review a district court's findings of fact to ascertain whether they are clearly erroneous. *Seal v. Hart*, 2002 MT 149, ¶ 13, 310 Mont. 307, ¶ 13, 50 P.3d 522, ¶ 13 (citation omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Seal*, ¶ 13 (citation omitted). A district court's determination that it lacks jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Seal*, ¶ 13 (citation omitted).

## DISCUSSION

¶15 Did the District Court err when it concluded that United Die was not subject to specific jurisdiction under Montana's long-arm statute?

¶16    Boyd argues that United Die is subject to specific jurisdiction under one or more of the provisions of Montana's long-arm statute, found at Rule 4B(1), M.R.Civ.P. That Rule provides:

> All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
> (a) the transaction of any business within this state;
>
> (b) the commission of any act which results in accrual within this state of a tort action; [or]
>
> . . .
>
> (e) entering into a contract for services to be rendered or for materials to be furnished in this state. . . .

For a Montana court to exercise jurisdiction over a nonresident defendant, two questions must be considered. (1) Does the nonresident defendant come within the provisions of Montana's long-arm jurisdiction statute; and (2) would exercise of long-arm jurisdiction over the nonresident comport with traditional notions of fair play and substantial justice? *Simmons v. State* (1983), 206 Mont. 264, 271, 670 P.2d 1372, 1376 (citations omitted). If we conclude, as a matter of statutory construction, that the nonresident did not engage in any of the several activities enumerated in our long-arm statute, our analysis ends and we must decline jurisdiction. However, if the non-resident has done something which potentially confers jurisdiction, we will advance to the due process component which is ultimately determinative of the jurisdictional question. *Simmons*, 206 Mont. at 272, 670 P.2d at 1376.

6

**Long-Arm Jurisdiction**

¶17 Boyd first claims that United Die "transacted business" within the meaning of Rule 4B(1)(a), M.R.Civ.P., and that the District Court erred when it concluded otherwise. Boyd claims that United Die's contacts within Montana were understated in the District Court's Order, and emphasizes that United Die sold latches to Boyd in Montana under numerous purchase orders over a span of eight years and later initiated and entered into a contractual relationship with A&S, another Montana resident.

¶18 United Die responds that it did not transact sufficient business within Montana to have availed itself of specific jurisdiction under Rule 4B(1)(a), M.R.Civ.P., and that it is entitled to sue and be sued in it own jurisdiction. United Die claims that its position is supported by our case law, and cites *Edsall Const. Co., Inc. v. Robinson* (1991), 246 Mont. 378, 382-83, 804 P.2d 1039, 1042, for the proposition that "interstate communication" in the form of a telephone call to submit a bid is not sufficient for jurisdiction to attach. United Die further argues that its situation is factually similar to that which was before this Court in *Cimmaron Corp. v. Smith*, 2003 MT 73, 315 Mont. 1, 67 P.3d 258, in which we found that a respondent collection agency located in Pennsylvania did not have sufficient contacts with Montana to be subject to specific jurisdiction.

¶19 In its Order, the District Court found that United Die supplied the latches to A&S for Boyd's benefit, but that copies of United Die's pricing were sent to A&S with a shipment of latches. It also found that United Die contacted A&S to solicit its business and that A&S later contacted United Die and Boyd to request bids. The District Court further found that

7

United Die bid on and was ultimately awarded the contract with A&S, and that the information supplied by Boyd which United Die allegedly misappropriated was supplied while Boyd was a Tennessee resident.

¶20  Relying on *Threlkeld v. Colorado*, 2000 MT 369, ¶ 25, 303 Mont. 432, ¶ 25, 16 P.3d 359, ¶ 25, the District Court concluded that "interstate communication" by itself was not sufficient contact to cause United Die to be subject to jurisdiction in Montana under Rule 4B(1)(a), M.R.Civ.P.  The District Court distinguished the cases on which Boyd relied on the grounds that the cases he cited were product liability or breach of warranty cases.

¶21  Boyd notes in his Brief that the District Court made these distinctions without providing an explanation as to how those differences would warrant a separate jurisdictional analysis.  In arguing for specific jurisdiction under Rule 4B(1)(a), M.R.Civ.P., Boyd relied on *Nelson v. San Joaquin Helicopters* (1987), 228 Mont. 267, 742 P.2d 447, among other cases.  The District Court distinguished *Nelson* on the grounds that it was a "bad debt" case, and further noted that, "it involved a close relationship between a California company and a Montana company."  As Boyd points out, several key factors for finding jurisdiction in *Nelson* are also present here.  *Nelson*, 228 Mont at 269, 742 P.2d at 448.  Nelson transported a broken helicopter to a Montana company, which referred him in turn to a California company to which Nelson ultimately delivered the helicopter for repair.  *Nelson*, 228 Mont. at 268-69, 742 P.2d at 448.  The repair cost was prohibitive, and a somewhat complicated trade ensued, in which the California company agreed to purchase the helicopter, but instead of paying Nelson outright, it transferred a promissory note to him payable by the Montana

8

company where he had initially taken the helicopter for repair. *Nelson*, 228 Mont. at 269, 742 P.2d at 448. The Montana company became insolvent before paying off the note in full, and Nelson filed suit against the California company which had transferred the note to him. *Nelson*, 228 Mont. at 269, 742 P.2d at 448.

¶22 We determined specific jurisdiction existed over the California company, pursuant to Rule 4B(1)(a), M.R.Civ.P., noting that the defendant's activities were more extensive than "a few phone calls back and forth between the parties" and that these activities--which included two years' worth of attempts collect a debt against the Montana helicopter repair company, followed by negotiations with Nelson until Nelson agreed to accept the promissory note as payment for his helicopter--were sufficient contacts with Montana. *Nelson*, 228 Mont. at 272, 742 P.2d at 450. In determining jurisdiction, we considered the Montana relationships the California company had with both Nelson and the Montana helicopter repair company. *Nelson*, 228 Mont. at 272, 742 P.2d at 450.

¶23 In *Nelson*, the fact that the plaintiff initiated a business relationship with the out-of-state defendant was not ultimately determinative of the jurisdiction question. Here, Boyd's relationship with United Die spanned many years and multiple transactions, and United Die subsequently allegedly interjected itself into an ongoing business relationship between Boyd and A&S in Montana. Moreover, Boyd's relationship with United Die is more extensive than Nelson's relationship with the California helicopter repair company, which encompassed only a single transaction. *Nelson*, 228 Mont. at 272, 742 P.2d at 450. Also, the California company's relationship with one Montana resident or another spanned two

9

years, *Nelson*, 228 Mont. at 272, 742 P.2d at 450, while in United Die's case, it spanned at least eight years and a series of negotiated contracts and fulfilled purchase orders.

¶24 However, United Die argues that the situation at hand is less similar to *Nelson* than it is to *Cimmaron* and *Edsall*, two cases in which we found that Montana did not have specific jurisdiction over the non-resident defendants. *Cimmaron*, ¶ 20; *Edsall*, 246 Mont. at 383, 804 P.2d at 1043. In *Edsall*, we held that telephone calls initiated by a Montana company soliciting a bid from a Utah company to install tile in Utah, were insufficient to extend specific jurisdiction over the Utah company. We noted that the defendant Utah company's only tie to Montana was that it was the home state of the plaintiff; without more, that did not justify specific jurisdiction in Montana. *Edsall*, 246 Mont. at 382-83, 804 P.2d at 1042.

¶25 *Edsall* is readily distinguishable from the situation at hand. In *Edsall*, the Utah company did not deliver goods or services to Montana. *Edsall*, 246 Mont. at 383, 804 P.2d at 1042. Its only connection with Montana was a request from a Montana resident that the Utah company bid on a single job to be performed entirely within Utah. *Edsall*, 246 Mont. at 383, 804 P.2d at 1042. In the case at hand, at least twenty requests were made from a Montana resident for United Die to manufacture latches. United Die initiated contact with another Montana resident on at least one occasion and submitted a price quote, and later, a bid to that Montana resident. United Die shipped its product into Montana on approximately twenty-two separate occasions. To suggest that United Die's only contact with Montana is

10

that plaintiff Boyd is a Montana resident is inconsistent with the facts of this case. Thus, *Edsall* is inapposite.

¶26 In *Cimmaron*, Budget, a Pennsylvania corporation, entered into a collection agreement with Cimmaron, a Montana corporation. *Cimmaron*, ¶ 4. In determining whether specific jurisdiction over Budget was to be had in Montana, the District Court found that: Budget's only contact with Montana was its agreements with Cimmaron; the services Budget was to perform for Cimmaron were to be performed in Pennsylvania; Cimmaron sent its account information to Pennsylvania in order for Budget to perform its services there; and, all of the claims made by Cimmaron in its Complaint pertained to actions Budget took, or failed to take, in Pennsylvania. *Cimmaron*, ¶ 15.

¶27 Boyd argues that *Cimmaron* is distinguishable because it involved a contract for services to be performed in another state, while the situation at hand involves a contract--or multiple contracts--for goods to be manufactured for and delivered to a Montana resident. United Die asserts that it rendered "services" in Ohio. However, United Die overlooks the fact that in *Cimmaron*, Budget provided a *service*--debt collection--which occurred entirely within Pennsylvania, whereas United Die provided a *product*--latches--which were specifically manufactured for and shipped to Montana residents. Thus, we conclude *Cimmaron* is less factually similar to this case than is *Nelson.*

¶28 Finally, relying on *Spectrum Pool Products, Inc. v. MW Golden, Inc.*, 1998 MT 283, 291 Mont. 439, 968 P.2d 728, United Die argues that an out-of-state company must make the initial contact with a Montana resident to do business for jurisdiction to attach, and

11

transaction of unsolicited business does not give rise to jurisdiction. It claims that since Boyd initially contacted United Die, Ohio is the proper jurisdiction. While in *Spectrum Pool*, it is true that the out-of-state company did make the initial contact, we did not hold that the initial contact is determinative of jurisdiction. *Spectrum Pool*, ¶ 21. Furthermore, whether Ohio may be a proper jurisdiction for this action has no bearing on whether jurisdiction may also be had in Montana. *See Spectrum Pool*, ¶ 20 (determining forum to be proper in Montana does not mean another state would not also be a proper forum).

¶29 In the case before us, we determine that United Die's contacts with Montana were more extensive than the contacts held by the defendants in *Edsall* and *Cimmaron*, and are closer qualitatively and quantitatively to the contacts which we found sufficient to grant jurisdiction in *Nelson*. Thus, we conclude that United Die had sufficient contacts with Montana for it to be subject to specific jurisdiction pursuant to Rule 4B(1)(a), M.R.Civ.P.

¶30 Boyd further argues that United Die's actions resulted in the accrual of a tort action in Montana, and thus Montana has specific jurisdiction over United Die pursuant to Rule 4B(1)(b), M.R.Civ.P. He points out that his Complaint alleged Intentional Interference with a Business Relationship, Breach of Fiduciary Duty to Maintain Confidence, and Misappropriation of Trade Secrets, and that these claims are all torts arising out of United Die's ongoing contractual relationships in Montana with Boyd and A&S.

¶31 He also argues that United Die is subject to specific jurisdiction under Rule 4B(1)(e), M.R.Civ.P., in that it entered, "into a contract for services to be rendered or for materials to be furnished in this state." Arguably, both Rule 4B(1)(b) and (e), M.R.Civ.P., would have

12

application here, given the facts before us. However, there is no need for us to reach these arguments, as the determination of jurisdiction under one of the several grounds for long-arm jurisdiction set forth in the statute is all that is needed for a determination of specific jurisdiction. See Rule 4B(1), M.R.Civ.P.

**Due Process**

¶32 Having determined that the necessary components exist for Montana to exercise specific jurisdiction over United Die through the long-arm provisions of Rule 4B(1), M.R.Civ.P., we now must determine whether exercising specific jurisdiction over United Die comports with traditional notions of fair play and substantial justice as embodied in the due process clause. *Simmons*, 206 Mont. at 274, 670 P.2d at 1377 (citations omitted).

¶33 Boyd argues that United Die has engaged in numerous activities within this forum which have availed it of jurisdiction in Montana, citing United Die's participation in an ongoing business relationship with Boyd, its delivery of goods to both Boyd and A&S, its numerous contracts with Boyd and A&S, and the revenue which United Die generated from these Montana contracts.

¶34 In *Simmons*, we explained that the Due Process Clause of the Fourteenth Amendment to the United States Constitution limits the power of a state court to render a valid personal judgment against a non-resident defendant, and that a state may exercise personal jurisdiction over a non-resident only if minimum contacts between the defendant and the forum state exist. *Simmons*, 206 Mont. at 272-73, 670 P.2d 1376-77 (citations omitted). We adopted

the Ninth Circuit test for determining whether the exercise of jurisdiction comports with due process:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws.

(2) The claim must be one which arises out of or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be reasonable.

*Simmons*, 206 Mont. at 276, 670 P.2d at 1378 (citing *Data Disc, Inc. v. Systems Tech. Assoc., Inc.* (9th Cir. 1977), 557 F.2d 1280, 1287).  We have further held that a plaintiff need not demonstrate each of the three elements to establish jurisdiction; once the plaintiff demonstrates that a defendant has purposefully availed itself of the privilege of conducting activities in Montana, a presumption of reasonableness arises, which a defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable. *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 85, 796 P.2d 189, 195 (citation omitted).  Jurisdiction may also be established where a defendant has created sufficient contacts to allow the state to exercise personal jurisdiction, if such exercise is sufficiently reasonable.  *Simmons Oil*, 244 Mont. at 86, 796 P.2d at 195.

¶35     A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum.  Conversely, a defendant does not purposefully avail itself of the forum's laws when its only contacts with the forum are random, fortuitous, attenuated, or due to the unilateral

14

activity of a third party. *Simmons Oil*, 244 Mont. at 86, 795 P.2d at 195. The defendant that invokes the laws of the forum state by purposefully availing itself of the privilege of conducting activities within the forum should reasonably anticipate being haled into court in the forum state, and the exercise of jurisdiction over such a defendant is fundamentally fair. *Simmons Oil*, 244 Mont. at 86, 795 P.2d at 195.

¶36    In the situation at hand, we cannot agree that United Die's entry into Montana was minimal. United Die knowingly shipped its product to Montana on a number of occasions. It negotiated purchase orders with both Boyd and A&S and it initiated a business relationship with A&S by calling A&S in Montana and offering A&S a price quote for latches. Given the many years of its relationship with Boyd after Boyd moved to Montana and the affirmative steps that United Die took to initiate a business relationship with A&S, we conclude that United Die purposefully availed itself of the privilege of conducting activities within this state.

¶37    Taking into account the extent of United Die's dealings within Montana, the chain of events which led up to Boyd's filing this lawsuit, and the test of whether it would be reasonable for United Die to have to defend itself as a result of this transaction in Montana, we conclude that exercising specific jurisdiction over United Die through the long-arm provisions of Rule 4B(1), M.R.Civ.P., would not offend traditional notions of fair play and substantial justice as embodied in the due process clause. As noted above, a plaintiff need demonstrate only that a defendant has purposefully availed itself of such privilege for a presumption of reasonableness to arise. Boyd having met this burden, we need not address

the remaining elements in determining whether the exercise of jurisdiction comports with due process. *See Simmons Oil*, 244 Mont. at 85, 796 P.2d at 195.

## CONCLUSION

¶38    For the foregoing reasons, we reverse and remand to the District Court for further proceedings not inconsistent with this Opinion.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE