DA 09-0233

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 396

GRIZZLY SECURITY ARMORED EXPRESS, INC.,

Plaintiff and Appellee,

v.

THE ARMORED GROUP, LLC,

Defendant and Appellant.

APPEAL FROM:     District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 08-1529(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Angela K. Jacobs and Todd A. Hammer, Hammer, Hewitt, Jacobs &
Floch, PLLC; Kalispell, Montana

Jared Simmons, Simmons & Gottfried, PLLC, Phoenix, Arizona

For Appellee:

David F. Stufft, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  September 30, 2009

Decided:  November 24, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Grizzly Security Armored Express, Inc. (Grizzly), obtained a default judgment in the Eleventh Judicial District Court, Flathead County, against The Armored Group, LLC (TAG), on February 3, 2009. TAG filed a motion on February 9, 2009, to set aside the default judgment. The motion automatically was deemed denied pursuant to M. R. Civ. P. 60(c), after the District Court had not ruled on the motion for more than sixty days after entry of the judgment. TAG appeals.

¶2     We review the following issue on appeal:

¶3     *Did the District Court slightly abuse its discretion when it refused to set aside the default judgment against TAG pursuant to M. R. Civ. P. 60(b)(1)?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4     Grizzly provides security and armored car services in Kalispell, Montana. TAG sells armored vehicles from its home in Phoenix, Arizona. Armored Solutions, Inc., (ASI), though not a party in this appeal, was a named defendant in the complaint, and is a manufacturer of armored vehicles based in Massachusetts.

¶5     Grizzly purchased a used 1999 Ford F-450 armored truck in September 2007 from TAG for $22,500. TAG sold this vehicle to Grizzly "As Is." Grizzly purchased a 2008 Dodge armored truck from TAG in December 2007 for $76,850. ASI manufactured the Dodge truck.

¶6     Grizzly claims to have experienced many problems with the purchased trucks, including a failed transmission in the Ford, and a faulty paint job and cracks in the bullet proof windows of the Dodge. A dispute arose between Grizzly and TAG regarding who

2

would pay for repairs to the trucks.

¶7    Grizzly filed suit against TAG and ASI on December 30, 2008, in which it alleged breach of warranty, breach of duty of good faith, strict liability, fraud, and constructive fraud. Grizzly retained a process server. The process server personally served Jared C. Simmons, TAG's agent for service of process, who also happened to be TAG's legal counsel, on January 7, 2009. Simmons claims that his secretary mistakenly stamped the complaint with the wrong receipt date. The error allegedly caused TAG to fail to file an answer within twenty days. TAG assumed that its answer was due on February 5, 2009.

¶8    Both parties admit that Simmons left a phone message for Grizzly's counsel to alert Grizzly that Simmons represented TAG. TAG argues that Simmons called Grizzly twice. Grizzly asserts that its records indicate only one phone message left with a paralegal.

¶9    Grizzly moved for entry of default on January 29, 2009. The Clerk of Court entered the default the same day. TAG retained local counsel on January 30, 2009. The District Court set a hearing for February 3, 2009, on Grizzly's motion for entry of a default judgment. Grizzly did not provide TAG with notice of the hearing. In fact, Grizzly's counsel crossed Simmon's name and address off the certificate of mailing. Grizzly's counsel made no mention at the hearing that Simmons had contacted him.

¶10   The District Court entered a default judgment in the amount of $130,239.43 at the conclusion of the hearing. Twenty-seven days elapsed between service of the complaint and the court's entry of the default judgment. The amount of the default judgment far exceeded the cost of repairs and even exceeded the sale price of the two vehicles.

3

Grizzly argues that this judgment amount accounts for Grizzly's loss of use of both vehicles.

¶11 TAG filed a motion on February 9, 2009, to set aside the judgment pursuant to M. R. Civ. P. 60(b), after learning of the entry of default judgment. The District Court scheduled a hearing on the motion for April 17, 2009. Grizzly filed a motion on April 16, 2009, to vacate the hearing pursuant to M. R. Civ. P. 60(c). This provision required the District Court to rule on TAG's motion within sixty days of entry of judgment. The sixty days had expired on April 4, 2009. The District Court granted Grizzly's motion. TAG appeals.

## STANDARD OF REVIEW

¶12 We review for an abuse of discretion a district court's denial of a motion to set aside a default judgment. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451. The moving party need only show a "slight abuse" to warrant reversal. *Essex*, ¶ 17. This standard supports our policy that "every litigated case should be tried on the merits and thus judgments by default are not favored." *Essex*, ¶ 17.

## DISCUSSION

¶13 *Did the District Court slightly abuse its discretion when it refused to set aside the default judgment against TAG pursuant to M. R. Civ. P. 60(b)(1)?*

¶14 This Court applies a four-part conjunctive test when deciding whether to set aside a default judgment under M. R. Civ. P. 60(b)(1). We evaluate whether the defaulting party 1) has proceeded with diligence, 2) has shown excusable neglect, 3) has a meritorious defense to the claim, and 4) would be injured if the judgment is permitted to

4

stand. *Montana Professional Sports, LLC v. National Indoor Football League, LLC*, 2008 MT 98, ¶ 35, 342 Mont. 292, 180 P.3d 1142, citing *Blume v. Metropolitan Life Ins. Co.*, 242 Mont. 465, 467, 791 P.2d 784, 786 (1990).

¶15 This Court reversed a district court's denial of a motion to set aside default judgment in *Blume* on the grounds that the defendant had proceeded with diligence. The Court reasoned that the defendant had hired local counsel to represent it within days of discovering the default judgment. The defendant also had filed a motion to set aside the default judgment within a week of discovery. *Blume*, 242 Mont. at 469, 791 P.2d at 786-87. The Court concluded that Metropolitan had proceeded with "the utmost diligence." *Blume*, 242 Mont. at 469, 791 P.2d at 786. We see similar circumstances here.

¶16 TAG hired local counsel on January 30, 2009, the day after the Clerk of Court had entered the default, and four days before the District Court had entered the default judgment. TAG filed its motion to set aside the default judgment on the morning of February 9, 2009, less than a week after the District Court entered the default judgment. Grizzly concedes that TAG exhibited diligence in attempting to have the default judgment set aside.

¶17 We next evaluate whether TAG's neglect was excusable, and sufficient to set aside the default judgment. We examine whether the reasons given for the neglect "are such that reasonable minds might differ in their conclusions concerning excusable neglect." *Myers v. All West Transport*, 235 Mont. 233, 236, 766 P.2d 864, 866 (1988), citing *U.S. Rubber Co. v. Community Gas & Oil Co.*, 139 Mont. 36, 39, 359 P.2d 375,

376 (1961). We resolve any doubt regarding whether the neglect was excusable in favor of trial on the merits. *Myers*, 235 Mont. at 236, 766 P.2d at 866.

¶18 This Court set aside a default judgment in *Worstell v. DeVine*, 135 Mont. 1, 335 P.2d 305 (1959), when counsel mistakenly assumed the date of service of a complaint to be the day his client brought it to his office. *Worstell*, 135 Mont. at 2-3, 335 P.2d at 306. The clerk of court had entered a default on the twenty-first day after service of process. The defendant promptly moved to set aside the default by filing a motion three days after the court entered the default judgment. This Court found excusable neglect as evidenced by the speed by which the plaintiff's counsel had moved for default on the twenty-first day after service of process, and defense counsel's lack of complete knowledge that the answer was past due. *Worstell*, 135 Mont. 5, 335 P.2d at 307.

¶19 Grizzly moved for default on the twenty-second day after service of process. Grizzly had an idea that TAG had legal counsel based upon Simmons' phone message. Grizzly made no attempt to return Simmons' phone call. Grizzly's counsel removed Simmons' name from the certificate of service regarding the notice for entry of default judgment to ensure that TAG would not be aware of the hearing. TAG moved to set aside the default judgment on February 9, 2009. Reasonable minds could differ whether the reasons offered by TAG for its neglect in failing to respond prove sufficient. This difference of opinion tips the balance in favor of trial on the merits. *Myers*, 235 Mont. at 236, 766 P.2d at 866.

¶20 The Dissent contends that this case "is on all fours factually" with this Court's decision in *Matthews v. Don K. Chevrolet*, 2005 MT 164, 327 Mont. 456, 115 P.3d 201.

6

¶ 30. We disagree. Five former employees of Don K's had alleged wrongful termination claims against Don K. Matthews's counsel represented all five employees. Matthews's counsel sought to consolidate the claims of all of the former employees into one action against Don K. Don K's counsel opposed Matthews's request to consolidate the claims. The district court required each former employee to file separate actions. *Matthews*, ¶ 4. Don K's counsel had advised Matthews's counsel before Matthews filed his claim that he would be representing Don K in all the individual actions. Don K's counsel further advised Matthews that he would accept service on behalf of Don K in all of the individual actions.

¶21 Matthews's counsel forwarded the summons and complaint, along with an acknowledgement of service, to Don K's counsel on September 11, 2003. *Matthews*, ¶ 5. This contact did not constitute the first salvo in the litigation as evidenced by the extensive contacts between Matthews's counsel and Don K's counsel prior to Matthews filing suit. Don K's counsel eventually signed and returned the acknowledgment of service on October 14, 2003. *Matthews*, ¶ 6.

¶22 Don K failed to make an appearance and Matthews obtained a default from the clerk of court on November 7, 2003. Matthews's counsel then sent a letter to Don K's counsel on December 4, 2003, advising him that he had caused a default to be entered against Don K. *Matthews*, ¶ 7. Matthews's counsel further advised Don K that the court had set a hearing for entry of default judgment and damages for December 11, 2003. No one appeared at the hearing on behalf of Don K despite the notice provided by

Matthews's counsel. The district court entered a judgment against Don K at the conclusion of the hearing. *Matthews*, ¶ 7.

¶23 The district court issued a writ of execution on December 18, 2003, that required the sheriff to satisfy the judgment against the property of Don K. *Matthews*, ¶ 8. Don K finally appeared on January 7, 2004, when it filed an ex parte motion to stay the writ of execution and to set aside the default and the default judgment. The district court failed to rule on the motion within sixty days and thus was deemed denied pursuant to M. R. Civ. P. 60(c). *Matthews*, ¶ 8. This Court affirmed.

¶24 The Court noted that Matthews's counsel had provided notice to Don K's counsel that a default had been entered. *Matthews*, ¶ 15. The Court further noted that Matthews's counsel also had advised Don K's counsel of the scheduled hearing on Matthews's motion for entry of the default judgment. *Matthews*, ¶ 15. Don K failed to heed the warnings. The Court determined that Don K's lack of attention to the complaint after receiving these warnings constituted "a serious disregard of the judicial process," and could not be considered excusable neglect. *Matthews*, ¶ 15.

¶25 Grizzly provided no similar notice here. In fact, Grizzly's counsel scratched Simmons's name off the certificate of service for the notice of the hearing on the entry of default. Grizzly's counsel opted not to return Simmons's telephone call regarding the complaint against TAG. Twenty-seven days elapsed from Grizzly's service of the complaint and the entry of the default judgment. Matthews's counsel waited fifty-seven days to seek entry of default. *Matthews*, ¶ 6. Matthews's counsel took the additional step of notifying Don K's counsel of the hearing on the motion for entry of default

8

judgment. *Matthews*, ¶ 7. Don K's counsel also had extensive contact with Matthews's counsel regarding the case before Matthews filed suit. We cannot deem TAG's failure to enter a timely appearance to be on par with the "serious disregard of the judicial process" evidenced by Don K's counsel that pushed Don K's inaction beyond the realm of excusable neglect. *Matthews*, ¶ 15.

¶26 We turn to the issue of whether TAG has a meritorious defense sufficient to set aside a default judgment. TAG must present "a prima facie defense." *Blume*, 242 Mont. at 470, 791 P.2d at 787. TAG asserts that the District Court cannot assert personal jurisdiction because TAG lacks sufficient minimum contacts with Montana to warrant the exercise of personal jurisdiction. TAG further argues that ASI manufactured the Dodge truck. TAG sold the Ford truck to Grizzly expressly "As Is." TAG finally contends that Grizzly failed to mitigate damages and that Grizzly failed to set forth sufficient facts alleging fraud. We need not discuss the merits of TAG's defenses. *Blume*, 242 Mont. at 470, 791 P.2d at 787. We instead consider whether TAG presents a prima facie defense. TAG's proposed answer to Grizzly's claims presents a prima facie defense in light of the issues raised by TAG.

¶27 Finally, we evaluate whether TAG would be injured were we to let the default judgment of $130,239.43 stand. This Court held in *Blume* that allowing a default judgment in the amount of $185,000 to stand, even against a large corporation such as Metropolitan Life Insurance, would affect the corporation adversely. *Blume*, 242 Mont. at 469, 791 P.2d at 787. TAG is a much smaller company than Metropolitan Life Insurance and TAG stands to lose $130,239.43. The default judgment exceeded the cost

9

of repairs of the trucks and it exceeded the sale price of the trucks. It is reasonable to assume that a default judgment of this size would injure TAG in light of the injuries alleged and the value of the trucks in question.

¶28 The District Court slightly abused its discretion by failing to set aside the default judgment pursuant to M. R. Civ. P. 60(b)(1), in light of these factors. *Essex*, ¶ 17. We reverse the District Court's denial of TAG's motion to set aside the default judgment. We vacate the default judgment and remand to the District Court to allow TAG to file an answer within twenty days of the date of this opinion. We reiterate the policy that disputes should be resolved on the merits. *Essex*, ¶ 17.

/S/ BRIAN MORRIS

We Concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER

Justice James C. Nelson dissents.

¶29 I dissent from the Court's decision.

¶30 This case is on all fours factually with this Court's decision in *Matthews v. Don K Chevrolet*, 2005 MT 164, 327 Mont. 456, 115 P.3d 201. In that case, this Court denied setting aside the default judgment when defendant's counsel attempted to blame his secretary for failing to calendar the time to respond; for misfiling the complaint and

10

summons in another file; and on the basis that his office was in confusion because he was moving offices. *Matthews*, ¶ 13. We rejected these reasons as constituting excusable neglect on the part of defense counsel. *Matthews*, ¶¶ 18-19. And, we determined that, on these facts, the trial court did not slightly abuse its discretion in denying Don K Chevrolet's motion to set aside the entry of default and the default judgment against it. *Matthews*, ¶ 20.

¶31 In the case at bar, counsel for The Armored Group, LLC (TAG) offers excuses which are not substantively different than those proffered in *Matthews*. Here, counsel claims that at the time he was served with the summons, he was a solo practitioner in the process of merging with another practice to form a new partnership. Counsel states that his office was "in flux." He also claims that office personnel were preparing and stamping an outgoing mailing announcing the official January 16, 2009 date establishing the new law firm, and that the date stamp was dialed forward to January 16, 2009. TAG's counsel maintains that the office personnel "inadvertently stamped the incorrect receipt date on the Complaint" with the result that TAG's answer date for the summons was miscalendared. As a result, TAG did not timely answer Grizzly's summons and complaint.

¶32 While the Court seeks to distinguish *Matthews* from the case at bar factually, the bottom line is that, having been properly served, TAG's counsel miscalendared his client's appearance date; neglected to retain Montana counsel until 23 days after his client was served; did nothing aside from leaving one ambiguous message on Grizzly's counsel's cell phone; and then sought to blame his office staff for his own carelessness.

11

We have not, heretofore, lowered the bar to accommodate neglectful attorneys such as TAG's counsel. Rather, we have held that counsel has an independent duty to monitor the litigation and to make sure his client's answer is timely filed, *Profess. Sports v. Nat. Indoor Foot. League*, 2008 MT 98, ¶¶ 42-45, 342 Mont. 292, 180 P.3d 1142; that failure to appear due to forgetfulness and the press of other business does not establish excusable neglect, *Morris v. Frank Transp. Co.*, 184 Mont. 74, 76, 601 P.2d 698, 699 (1979); and that the neglect of an attorney is attributable to the client, *Lords v. Newman*, 212 Mont. 359, 367-68, 688 P.2d 290, 295 (1984). Today, we ignore these well-established rules, and we create one that rewards this sort of neglect. I would just follow our existing case law.

¶33   I cannot conclude that there is any substantive difference between the facts in *Matthews*, the cases cited above, and those here. We should follow our precedent and affirm the trial court.

¶34   I dissent from our failure to do so.


/S/ JAMES C. NELSON