DA 10-0267

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 128

GRIZZLY SECURITY ARMORED EXPRESS, INC.,

Plaintiff and Appellant,

v.

THE ARMORED GROUP, LLC,

Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DV 08-1529(B)<br>Honorable Ted O. Lympus, Presiding Judge |

COUNSEL OF RECORD:

For Appellant:

David F. Stufft, Attorney at Law, Kalispell, Montana

For Appellee:

Angela K. Jacobs, Todd A. Hammer; Hammer, Hewitt, Jacobs & Floch, PLLC, Kalispell, Montana

Jared Simmons, Simmons & Gottfried, PLLC, Phoenix, Arizona

Submitted on Briefs:   April 6, 2011

Decided:   June 7, 2011

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 Grizzly Security Armored Express, Inc. (Grizzly) appeals from an order of the Eleventh Judicial District Court, Flathead County, that dismissed its action against The Armored Group, LLC (TAG) for lack of personal jurisdiction. We reverse.

¶2 We review the following issues on appeal:

¶3 *Whether the Court may rely upon testimony on appeal from a vacated default judgment hearing.*

¶4 *Whether the District Court lacked personal jurisdiction over TAG.*

FACTUAL AND PROCEDURAL HISTORY

¶5 TAG sells armored vehicles throughout the United States and internationally. TAG's website boasts that it operates eight manufacturing facilities in five different countries and that it operates offices in seven countries. TAG located its principal place of business in Phoenix, Arizona. Grizzly provides security and armored services in Kalispell, Montana. Grizzly purchased new and used armored vehicles from TAG to use in its Montana business.

¶6 Grizzly purchased a used Ford and a new 2008 Dodge from TAG in 2007. Grizzly alleges that the two vehicles had mechanical problems and body damage. Grizzly claims that the transmission in the Ford failed, despite TAG's representations that the truck had a brand new transmission, and that the brand new Dodge had body damage. The parties dispute responsibility for the repairs.

¶7 Jeremy Johnson (Johnson) works for TAG as a sales representative. Johnson communicated over the phone and through email with Grizzly in order to facilitate sales and

2

arrange any necessary repairs to Grizzly's vehicles. TAG has sold at least five additional trucks to Grizzly over the past five years for a total of approximately $230,000. Greg Harris (Harris), Grizzly's owner, communicated with Johnson about problems that arose with the vehicles.

¶8 Johnson also spoke with other business owners in Kalispell about repairing vehicles for Grizzly. TAG's website represents that TAG services vehicles in Montana. Johnson's efforts to find businesses in Kalispell to repair its vehicles support this claim. TAG's website indicates that "[w]e service in the following states" and lists Montana. TAG also offered to rent Grizzly a truck for $600 a day to replace the damaged 2008 Dodge. TAG indicated that it could ship the rental from Texas to Montana.

¶9 Johnson contacted several Kalispell businesses about repairing the 2008 Dodge that TAG had sold to Grizzly. TAG contacted Collision Craft in Kalispell to inspect the 2008 Dodge. Tom Fitzpatrick (Fitzpatrick), owner of M&T Autobody in Kalispell, spoke with Johnson about body damage on the 2008 Dodge. M&T Autobody previously had repainted a vehicle that Grizzly had purchased from TAG. TAG had paid M&T Autobody for the repairs. Johnson also spoke with a representative from the Glass Doctor in Kalispell about the 2008 Dodge.

¶10 Harris and Johnson unsuccessfully attempted to resolve the dispute over the alleged vehicle defects and any necessary repairs. Grizzly eventually filed suit against TAG in Montana to recover damages from the sale. Grizzly served TAG's corporate counsel in Arizona. TAG failed to file a timely answer and Grizzly moved for entry of default. Grizzly

3

presented Harris's testimony at the default judgment hearing. The District Court entered a default judgment against TAG in the amount of $130,239.43. This Court reversed the default judgment against TAG. *Grizzly Sec. Armored Express, Inc., v. The Armored Group, LLC,* 2009 MT 396, 353 Mont. 399, 220 P.3d 661.

¶11 TAG filed a motion to dismiss for lack of personal jurisdiction with the District Court in its first appearance on remand. The court granted TAG's motion to dismiss. Grizzly appeals.

## STANDARD OF REVIEW

¶12 This Court reviews de novo a district court's decision on a motion to dismiss. *Morigeau v. Gorman*, 2010 MT 36, ¶ 6, 355 Mont. 225, 225 P.3d 1260. We must construe the complaint in the light most favorable to the plaintiff. *Id.*

## DISCUSSION

¶13 *Whether the Court may rely upon testimony on appeal from a vacated default judgment hearing.*

¶14 Grizzly filed a motion asking this Court to permit the use of the original default hearing transcript from *Grizzly Sec. Armored Express, Inc., v. The Armored Group, LLC,* 2009 MT 396, 353 Mont. 399, 220 P.3d 661, in the current appeal. Grizzly indicated that the transcript provides relevant factual information. TAG did not oppose Grizzly's motion. We granted Grizzly's motion and ordered the original default hearing transcript to become part of the record before the Court in this appeal. TAG admits in its brief that it stipulated that the transcript could become part of the record on this current appeal.

4

¶15 TAG nevertheless contends that this Court cannot rely on any testimony from that hearing for the purposes of determining whether the District Court may exercise personal jurisdiction over TAG. TAG argues that Grizzly purposefully prevented it from participating in the default hearing and that Grizzly's wrongful conduct prevented TAG from presenting its own evidence and from cross-examining Grizzly's owner Greg Harris.

¶16 Nothing in the record indicates, however, that the court or Grizzly prevented TAG from cross-examining Harris in a subsequent hearing. TAG in fact entered another stipulation in order to waive a scheduled hearing on TAG's motion to dismiss for lack of personal jurisdiction. TAG could have used the hearing as an opportunity to present evidence or cross-examine any witnesses Grizzly presented, including Harris. The record demonstrates that the District Court afforded TAG the opportunity to present evidence and to examine witnesses or cross-examine Harris at a hearing. TAG waived this opportunity. TAG elected to present its own evidence in the form of affidavits. The record does not support TAG's argument that the court or Grizzly denied TAG an opportunity to cross-examine Harris.

¶17 TAG finally argues that this Court may not rely on affidavits to determine whether the District Court possessed personal jurisdiction over TAG. Both parties used affidavits, instead of testimony at a hearing, to establish much of the evidence in the record. Grizzly submitted Harris's testimony from the default judgment hearing as an affidavit. Grizzly also submitted affidavits from various Kalispell area business owners involved in the

5

unsuccessful repair attempts. TAG relies upon *Knoepke v. S.W. Ry.* 190 Mont. 238, 620 P.2d 1185 (1980), to support its argument.

¶18 The Court in *Knoepke* determined that the district court could rely upon facts established through affidavits to determine jurisdiction. *Knoepke*, 190 Mont. at 244-45, 620 P.2d at 1188-89. The Court noted that a court should afford less weight to an affidavit, however, if the opposing party or the court prevented counsel from cross-examining the affiant. *Id.* The Court ultimately approved the district court's use of affidavits and other discovery materials to determine whether it could exercise jurisdiction over nonresident defendants. The Court noted that the district court had afforded the parties sufficient opportunity to refute the affidavits through deposition and interrogatories. *Id.*

¶19 The District Court here afforded the parties sufficient opportunity to refute affidavits through depositions, interrogatories, and through witness testimony at a hearing. *Id.* TAG elected not to depose Grizzly's owner Greg Harris. TAG opted not to cross-examine Grizzly's witnesses at a scheduled hearing. TAG waived its right to the hearing. TAG presented its own evidence in the form of affidavits. TAG's argument that the Court must disregard Harris's testimony or any of Grizzly's affidavits presented to the District Court proves unconvincing. *Id.*

¶20 *Whether the District Court lacked personal jurisdiction over TAG.*

¶21 This Court can exercise personal jurisdiction over a nonresident defendant through M. R. Civ. P. 4B(1) as long as Montana's exercise of personal jurisdiction comports with federal law. *Cimmaron Corp. v. Smith*, 2003 MT 73, ¶ 10, 315 Mont. 1, 67 P.3d 258. Montana

6

courts may exercise personal jurisdiction under M. R. Civ. P. 4B(1) through two ways—general jurisdiction or long-arm jurisdiction. M. R. Civ. P. 4B(1) grants general jurisdiction over all persons found within the state of Montana. M. R. Civ. P. 4B(1)(a)-(f) lists the circumstances under which Montana courts may extend long-arm jurisdiction over a nonresident defendant.

¶22 Grizzly first asserts that Montana courts may exercise general jurisdiction over TAG under M. R. Civ. P. 4B(1) because TAG's contacts with the state qualify TAG as "found within" Montana. Grizzly also argues that Montana may exert long-arm jurisdiction over TAG because the claim arises out of TAG's transaction of business within the state. The question of whether a Montana court possesses long-arm jurisdiction over TAG proves dispositive.

**Montana's Long-arm Jurisdiction**

¶23 Montana courts can exert long-arm jurisdiction over any person if the claim arises out of that person's transaction of business within the state. M. R. Civ. P. 4B(1)(a); *Nelson v. San Joaquin Helicopters*, 228 Mont. 267, 271, 742 P.2d 447, 449 (1987); *Great Plains Crop Mgt., Inc. v. Tryco Mfg. Co.*, 554 F. Supp. 1025, 1027 (D. Mont. 1983). The court considers the nature and extent of the nonresident defendant's contact with the state. *B. T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, ¶¶ 17-31, 323 Mont. 308, 100 P.3d 127. Jurisdiction comports with M. R. Civ. P. 4B(1)(a) if the nonresident business conducts "substantial" business activity in the state. *Bunch v. Lancair Intl., Inc.*, 2009 Mont. 29, ¶ 18, 349 Mont. 144, 202 P.3d 784.

7

¶24    The nonresident defendant in *Nelson* entered into multiple contracts with different Montana businesses. *Nelson*, 228 Mont. at 268-69, 742 P.2d at 448.  Nelson contacted the nonresident business, San Joaquin Helicopters (San Joaquin), to repair a helicopter after another Montana business, Garlick, recommended the business.  Garlick previously had entered into contracts with San Joaquin. *Id.*  Nelson transported a helicopter to San Joaquin in California for repair, but the repair proved cost prohibitive.  Nelson and San Joaquin negotiated over the phone the sale of the helicopter to San Joaquin.  San Joaquin transferred a promissory note to Nelson payable by Garlick, the other Montana business, in order to pay for the helicopter.  Garlick apparently had owed San Joaquin debt on a previous transaction.  Garlick likewise failed to pay Nelson on the promissory note. *Id.*

¶25    Nelson filed suit against San Joaquin in Montana to recover the debt owed on the helicopter purchase.  San Joaquin moved to dismiss the action for lack of personal jurisdiction.  The Court determined that Montana had long-arm jurisdiction over San Joaquin based on its multiple contractual relationships with two different Montana businesses. *Nelson*, 228 Mont. at 271, 742 P.2d at 449.  The fact that San Joaquin did not hold a Montana business license and all the negotiations had taken place over the phone did not prove compelling. *Nelson*, 228 Mont. at 268, 742 P.2d at 448.  The Court rejected San Joaquin's argument that its only contact with the state included phone calls back and forth from California. *Nelson,* 228 Mont. at 272, 742 P.2d at 450.  The Court determined that San Joaquin's activities, specifically negotiating contracts between multiple Montana businesses, established that it had transacted business within the state. *Id.*

8

¶26    The U.S. District Court of Montana determined in *Tryco* that a nonresident defendant had transacted business in Montana for purposes of long-arm jurisdiction. *Tryco*, 554 F. Supp. at 1027. The nonresident defendant had advertised in a national magazine that a Montana resident could be expected to read. The nonresident defendant had mailed a brochure to a potential customer in Montana. In fact, the nonresident defendant had sold farm equipment to a Montana business over the phone. Finally, the nonresident defendant had made arrangements for shipment of goods into Montana, and had solicited additional sales from the Montana business. *Id*. The fact that the nonresident defendant had sold only three tractors to the one business in Montana and that the Montana business had initiated the contact by calling Tryco in Illinois failed to overcome what the court determined qualified as substantial business activities in Montana. *Id.* at 1026-27.

¶27    By contrast, the plaintiff in *Bunch* sued several nonresident businesses after an airplane manufactured in Oregon and owned by an Oregon resident had crashed in Montana. *Bunch*, ¶¶ 2-3. The nonresident businesses had manufactured the airplane or its parts. None of the nonresident businesses had registered to do business in Montana. None of the nonresident businesses had shipped or sold any planes or aircraft parts to purchasers in Montana. None had advertised in Montana. *Id.* at ¶¶ 4-6. The plaintiff argued that fourteen airplanes manufactured by the companies had been registered in Montana. *Id.* at ¶ 18. The Court concluded that the mere presence of the airplanes in Montana did not establish that the nonresident defendants had conducted business in Montana. *Id.* at ¶ 55. The presence of the

9

aircraft in Montana instead had resulted from Bunch's unilateral activity—flying to Montana. *Id.*

¶28 TAG also directs the Court to *Edsall* and *Cimmaron* to support its argument that its contacts with Montana do not satisfy M. R. Civ. P. 4B(1)(a). The Court concluded in *Edsall* that telephone calls initiated by a Montana company soliciting a bid from a Utah tile company to install tile in Utah did not satisfy M. R. Civ. P. 4B(1)(a). *Edsall Constr. Co. v. Robinson*, 246 Mont. 378, 383, 804 P.2d 1039, 1042-43 (1991). The Court likewise found that a nonresident business that had communicated with a Montana business about a contract that the parties had performed entirely out of state did not qualify as transacting business within the state. *Cimmaron*, ¶ 15.

¶29 TAG contends that it did not subject itself to personal jurisdiction in Montana merely because it had entered into a contract with Grizzly to sell vehicles. TAG maintains that it did not solicit business from Montana, that it did not sell trucks to any other Montana business, that sales to Grizzly did not constitute a significant component of TAG's business, and that the critical performance of the contracts occurred outside of Montana. TAG argues that its activities fail to add up to transacting business in Montana.

¶30 TAG's efforts to liken its contact with Grizzly as merely entering into a contract to be performed out of state prove unconvincing. TAG established a business relationship with Grizzly through its past contracts. TAG previously had sold at least five other vehicles to Grizzly over a five year period. TAG's business related contacts with Montana demonstrate more substantial contacts than those in *Edsall* and *Cimmaron*. The record also reflects that

10

similar to the nonresident business in *Nelson*, TAG had entered several contracts with other Montana businesses in its attempt to resolve the dispute with Grizzly. *Nelson*, 228 Mont. at 272, 742 P.2d at 450.

¶31 Grizzly presented affidavits from other Montana business owners with whom TAG had done business or had contacted about repairing vehicles Grizzly purchased from TAG. TAG's salesperson, Johnson, made most of the contact evidenced in the record. The owner of M&T Autobody in Kalispell, Fitzpatrick, stated that TAG had paid him to repaint a vehicle that TAG had sold to Grizzly. Fitzpatrick evaluated the 2008 Dodge as it came off the transport truck. Fitzpatrick called Johnson at TAG in Arizona to discuss problems with the truck.

¶32 Johnson had spoken with a representative from the Glass Doctor, another Montana business, about repairing the 2008 Dodge. Johnson also contacted the owner of another Montana business, Collision Craft, to inspect the 2008 Dodge. Harris testified that Johnson had directed him to take the 2008 Dodge to Kari Dodge, another Montana business, for repairs. Kari Dodge repaired the battery and TAG paid for the repair. The record reflects that like the nonresident business in *San Joaquin*, TAG had contacted numerous businesses and had contracted with more than one Montana business. *Nelson*, 228 Mont. at 272, 742 P.2d at 450.

¶33 TAG's Montana contacts also compare favorably to the nonresident defendants in *Tryco*. *Tryco*, 554 F. Supp. at 1027. Like the plaintiffs in *Tryco*, Grizzly initiated the contact with the nonresident business. The contact in *Tryco* resulted from Tryco's

11

advertising in a national magazine that likely would reach interested Montanans. *Id.* The content on TAG's website indicates that TAG conducts business across the country and services vehicles in Montana. TAG's advertising suggests that it sells and services trucks across the country such that it willingly would transact business in Montana. Like the nonresident business's advertising in *Tryco*, TAG's advertising likely would reach interested Montanans. *Id.* TAG's advertising even indicates that it services vehicles in Montana. TAG actually serviced Grizzly's vehicles in Montana through the work performed by other Montana businesses. TAG has sold approximately seven vehicles to Grizzly over the past five years.

¶34 TAG points to the fact that it drafted the sales contracts in Texas, signed the contracts in Arizona, and sent them to Montana. Grizzly signed the contracts in Montana and mailed them back to Arizona. Grizzly apparently wired payment to an Illinois bank. TAG did not manufacture the vehicles in Montana and did not ship the vehicles to Montana. These facts do not tip the scales in favor of declining to exercise personal jurisdiction in Montana in light of the fact that TAG knew that Grizzly intended to use the vehicles in its Montana business, that TAG previously had sold vehicles to Grizzly, and that TAG had serviced Grizzly's vehicles through other Montana businesses.

¶35 TAG's business contacts with Montana qualify as more substantial than the nonresident defendants in *Bunch*, *Edsall*, or *Cimmaron*. TAG's trucks did not end up in Montana as a result of Grizzly's unilateral action. *Bunch*, ¶ 18. TAG negotiated numerous contracts with Grizzly for armored vehicles that Grizzly used in its Montana business.

12

*Tryco*, 554 F. Supp. at 1027. TAG contracted with several Montana businesses to make repairs to the vehicles that it sold to Grizzly. *Nelson,* 228 Mont. at 272, 742 P.2d at 450. TAG's business contacts with Montana qualify as substantial. Grizzly's claim arose out of TAG's business activity in Montana. M. R. Civ. P. 4B(1)(a). TAG transacted sufficient business in Montana to support the extension of long-arm jurisdiction over TAG under M. R. Civ. P. 4B(1)(a).

**Due Process**

¶36 We next must consider whether Montana's exercise of personal jurisdiction comports with notions of due process under federal law. *B.T. Metal Works*, ¶ 32. Montana's exercise of jurisdiction over TAG must not violate traditional notions of fair play and substantial justice. *Id.*; U.S. Const. amend. XIV. Montana's exercise of jurisdiction over TAG does not violate due process if the defendant's activities in Montana qualify as substantial or continuous and systematic, as opposed to random, fortuitous or attenuated. *Simmons v. State*, 206 Mont. 264, 276, 670 P.2d 1372, 1378 (1983) (citing *Data Disc, Inc. v. Sys. Tech. Assn.,* 557 F.2d 1280, 1287 (9th Cir. 1977)).

¶37 We have adopted the test set forth by the Ninth Circuit Court of Appeals to determine whether Montana's exercise of jurisdiction comports with due process. *Simmons*, 206 Mont. at 276, 670 P.2d at 1378. The nonresident defendant must do something purposefully to avail itself of the privilege of conducting activities in the forum, the claim must arise from the defendant's forum related activities, and the exercise of jurisdiction must be reasonable. *Id.* A nonresident defendant purposefully avails itself to the privilege of conducting

13

activities in the forum state, and, therefore to the state's laws by taking voluntary action designed to have an effect in the forum. *B.T. Metal Works*, ¶ 35.

¶38 The nonresident business in *B.T. Metal Works* began contracting with B.T. Metal Works when its primary place of business was in Tennessee. *Id.* at ¶ 6. B.T. Metal Works later moved to Helena, Montana, and continued to contract with the nonresident business for several years. *Id.* at ¶ 7. The business fulfilled twenty purchases from B.T. Metal Works and shipped them on behalf of B.T. Metal Works to a tribal corporation in Poplar, Montana. *Id.* The nonresident business approached B.T. Metal Works with an offer to purchase its business with the tribal corporation. B.T. Metal Works declined. *Id.* at ¶ 9. The nonresident business later solicited B.T. Metal Works's business directly from the tribal corporation. The nonresident business won a bid on a contract with the tribal corporation and took over B.T. Metal Works's contract. *Id.*

¶39 The Court determined that the nonresident business's activities in Montana did not qualify as minimal. *Id.* at ¶ 36. The nonresident business knowingly had shipped products to a Montana business for use in Montana. The nonresident business had initiated a business relationship with the tribal corporation by contacting the corporation and bidding on a contract. *Id.* The Court concluded that the nonresident business purposefully had availed itself of conducting activities in the state. *Id.* at ¶¶ 36-37. Montana's exercise of personal jurisdiction over the nonresident business did not violate federal law. *Id.* at ¶ 37.

¶40 TAG conducted business with Grizzly for several years. This business relationship resulted in TAG's vehicles becoming part of a Montana business's fleet. Johnson knew that

14

Grizzly used TAG's vehicles in Montana. Johnson contacted Montana businesses in order to repair vehicles that TAG had sold to Grizzly. TAG purposefully availed itself to the privilege of conducting business activities in Montana. *Id.* Grizzly's alleged injury resulted from TAG's activity in Montana—selling and servicing vehicles. *B.T. Metal Works*, ¶¶ 36-37. The majority of the witnesses and the evidence are located in Montana. TAG reasonably could have anticipated that it would have to defend itself in a Montana court. *Id.* at ¶ 36. Montana's exercise of personal jurisdiction over TAG qualifies as reasonable. *Simmons*, 206 Mont. at 276, 670 P.2d at 1378.

¶41    The Montana court's exercise of personal jurisdiction over TAG through long-arm provisions of M. R. Civ. P. 4B(1) does not offend traditional notions of fair play and substantial justice. *Simmons*, 206 Mont. at 276, 670 P.2d at 1378. We reverse the District Court's order and remand to the court for further proceedings consistent with this opinion.


/S/ BRIAN MORRIS


We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER