*411 ***482 ¶1 Ford Motor Company (Ford) petitions this Court for a writ of supervisory control following an order of the Eighth Judicial District Court, Cascade County, in Charles Lucero v. Ford Motor Company , ADV-18-247(b), denying its motion to dismiss for lack of personal jurisdiction. We accept supervisory control, conclude Montana has specific personal jurisdiction over Ford in this case, and accordingly affirm the District Court's order. This Opinion and Order addresses the following issue:
Does Montana have specific personal jurisdiction over Ford regarding Lucero's design defect, failure to warn, and negligence claims when the vehicle accident occurred in Montana but the vehicle was not designed, manufactured, or first sold by Ford in Montana?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Markkaya Jean Gullett, a Montana resident, drove a 1996 Ford Explorer. Ford did not design or manufacture the Explorer in Montana. Ford assembled the Explorer in Kentucky and sold it for the first time to a dealer in Washington. Over ten years later, the Explorer was ***483 resold and registered in Montana. In 2015, as Gullett drove the Explorer on the interstate in Montana, one of the Explorer's tires suffered a tread/belt separation. The vehicle lost stability, rolled into a ditch, and came to rest upside down. Gullett died at the scene. Gullett's personal representative, Charles Lucero (Lucero), filed this suit against Ford in Montana state district court on behalf of Gullett and her heirs. The complaint alleges three claims against Ford: strict liability for design defect, strict liability for failure to warn, and negligence. Lucero seeks compensatory and punitive damages.
¶3 Defendant Ford moved to dismiss, arguing Montana does not have specific personal jurisdiction over Ford regarding Lucero's claims and specifically reasoning that there is no link between Ford's Montana contacts and Lucero's claims. The District Court disagreed and ultimately concluded it had specific personal jurisdiction over Ford.
¶4 Ford now asks this Court to exercise supervisory control over the District Court, conclude no specific personal jurisdiction exists, and dismiss the case against Ford. Ford faults the District Court for resting its analysis on Ford's in-state contacts and the fact that Gullett was injured in Montana, arguing the court erred when it failed to identify a link between Ford's contacts with Montana and Lucero's claims. Lucero asserts the court's exercise of specific personal jurisdiction is appropriate in this case.
STANDARD OF REVIEW
¶5 This Court has supervisory control over Montana courts. Mont. Const. art. VII, § 2 (2); see also Great Falls Clinic LLP v. Mont. Eighth Judicial Dist. Court , 2016 MT 245, ¶ 6, 385 Mont. 95, 381 P.3d 550. Supervisory control is an extraordinary remedy and we determine whether to use it on a case-by-case basis. M. R. App. P. 14(3). We may exercise supervisory control when "urgency ... mak[es] the normal appeal process inadequate," "the case involves purely legal questions," and "[c]onstitutional issues of state-wide importance are involved." M. R. App. P. 14(3)(b).
¶6 This Court reviews a personal jurisdiction ruling de novo. Tackett v. Duncan , 2014 MT 253, ¶ 16, 376 Mont. 348, 334 P.3d 920.
*412 DISCUSSION
¶7 We accept Ford's petition for supervisory control to resolve the issue of whether a Montana state court may exercise specific personal jurisdiction over Ford regarding Lucero's design defect, failure to warn, and negligence claims. Urgency makes the normal appeal process inadequate in this case involving personal jurisdiction, because the ***484 District Court must have power over the parties in a proceeding to afford adequate relief. The question is purely legal and of state-wide constitutional importance: Ford's due process rights are at issue and this decision will clarify when persons injured in Montana may appropriately file suit in Montana courts. We accordingly accept supervisory control and, for the following reasons, affirm the District Court's decision finding that Montana may exercise specific personal jurisdiction over Ford in this case.
¶8 Personal jurisdiction-a court's power over the parties in a proceeding-may be general (all-purpose) or specific (case-linked). DeLeon v. BNSF Ry. Co. , 2018 MT 219, ¶ 7, 392 Mont. 446, 426 P.3d 1. "General personal jurisdiction is premised upon the defendant's relationship to the forum state, while specific personal jurisdiction is premised upon the defendant's relationship to both the forum state and the particular cause of action." DeLeon , ¶ 7. Ford is undisputedly not subject to general personal jurisdiction in Montana. See BNSF Ry. Co. v. Tyrrell , 581 U.S. ----, ----, 137 S. Ct. 1549, 1559, 198 L.Ed.2d 36 (2017). The question in this case, therefore, is whether Montana may exercise specific personal jurisdiction over Ford regarding Lucero's design defect, failure to warn, and negligence claims.
¶9 Specific personal jurisdiction exists when the suit itself "arises from the specific circumstances set forth in Montana's long-arm statute, M. R. Civ. P. 4(b)(1)." Buckles v. Cont'l Res., Inc. , 2017 MT 235, ¶ 15, 388 Mont. 517, 402 P.3d 1213. A Montana court's exercise of specific personal jurisdiction "depends on whether the defendant's 'suit-related conduct' created a substantial connection with" Montana. Tackett , ¶ 19 (quoting Walden v. Fiore , 571 U.S. 277, 284, 134 S. Ct. 1115, 1121, 188 L.Ed.2d 12 (2014) ). The defendant's relationship with the forum and the litigation must relate to contact the defendant itself created with the forum. Tackett , ¶ 32. Accordingly, exercising specific personal jurisdiction over a defendant is only appropriate when both the defendant and the underlying controversy are appropriately affiliated with Montana. Tackett , ¶ 19 (citing Daimler AG v. Bauman , 571 U.S. 117, 133, 134 S. Ct. 746, 758, 187 L.Ed.2d 624 (2014) (stating that specific personal jurisdiction focuses on the "relationship among the defendant, the forum, and the litigation")).
¶10 We apply a two-step test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant. DeLeon , ¶ 10 (citing Milky Whey, Inc. v. Dairy Partners, LLC , 2015 MT 18, ¶ 18, 378 Mont. 75, 342 P.3d 13 ; Tackett , ¶ 22 ). First, we determine whether personal jurisdiction exists under Montana's long-arm statute, M. R. Civ. P. 4(b)(1). Milky Whey , ¶ 18. If the first step is satisfied, we ***485 then determine whether exercising personal jurisdiction is constitutional; that is, whether it conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause." Cimmaron Corp. v. Smith , 2003 MT 73, ¶ 10, 315 Mont. 1, 67 P.3d 258.
¶11 First, in considering whether specific personal jurisdiction exists under Montana's long-arm statute, we turn to M. R. Civ. P. 4(b)(1) which provides, in pertinent part: "[A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from ... the commission of any act resulting in accrual within Montana of a tort action." M. R. Civ. P. 4(b)(1)(B). In this case, Lucero's claims for relief arise from Ford's alleged actions of design defect, failing to warn, and negligence. Lucero alleges those actions resulted in the accrual of a tort action in Montana: Gullett was driving the Explorer in Montana when the accident occurred. Accordingly, we conclude Lucero's claims for relief arise from Ford's actions allegedly resulting in a tort action accruing within Montana. See *413 Bunch v. Lancair Int'l, Inc. , 2009 MT 29, ¶ 40, 349 Mont. 144, 202 P.3d 784 (concluding the out-of-state defendant's conduct fell under Montana's long-arm statute because the alleged tort accrued in Montana).[1] Step one is satisfied; Ford's conduct falls under Montana's long-arm statute.
¶12 We next turn to the question of whether exercising personal jurisdiction over Ford is constitutional. A Montana court's exercise of personal jurisdiction over a defendant is limited by the Fourteenth Amendment's Due Process Clause. U.S. Const. amend. XIV. A ***486 defendant must have "certain minimum contacts [with Montana] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Tackett , ¶ 18 (quoting Walden , 571 U.S. at 283, 134 S. Ct. at 1121 (quoting Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L.Ed. 95 (1945) )). The concept protects a defendant from having to litigate in a distant forum and allows a defendant to reasonably anticipate where he may be haled into court. World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L.Ed.2d 490 (1980). The primary focus "is the defendant's relationship to the forum State." Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty. , 582 U.S. ----, ----, 137 S. Ct. 1773, 1779, 198 L.Ed.2d 395 (2017). To determine if exercising personal jurisdiction over a defendant comports with due process, we consider whether: (1) the nonresident defendant purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws; (2) the plaintiff's claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable. Simmons v. State , 206 Mont. 264, 276, 670 P.2d 1372, 1378 (1983). Once the plaintiff demonstrates that the first element is satisfied-that the defendant purposefully availed itself of the privilege of conducting activities in Montana-a presumption of reasonableness arises, which the defendant can overcome only by presenting a compelling case that jurisdiction would be unreasonable. B.T. Metal Works v. United Die & Mfg. Co. , 2004 MT 286, ¶ 34, 323 Mont. 308, 100 P.3d 127.
¶13 First, we consider whether Ford purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws. "A nonresident defendant purposefully avails itself of the benefits and protections of the laws of the forum state when it takes voluntary action designed to have an effect in the forum." B.T. Metal Works , ¶ 35. On the other hand, "a defendant does not purposefully avail itself of the forum's laws when its only contacts with the forum are random, fortuitous, attenuated, or due to the unilateral activity of a third party." B.T. Metal Works , ¶ 35.
¶14 The stream-of-commerce theory explains that a defendant may purposefully avail itself of the privilege of conducting activities in the forum when it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen , 444 U.S. at 298, 100 S. Ct. at 567. The focus must remain on the defendant: "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum *414 State are such that he should ***487 reasonably anticipate being haled into court there." World-Wide Volkswagen , 444 U.S. at 297, 100 S. Ct. at 567.
¶15 Justice O'Connor, writing for a plurality of four in Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty. , 480 U.S. 102, 112, 107 S. Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (plurality), introduced what is now known as the "stream of commerce plus" theory: placing a product into the stream of commerce, without more, does not demonstrate purposeful availment. Instead, a defendant must engage in some "additional conduct" establishing its "intent or purpose to serve the market in the forum State, [such as] designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi , 480 U.S. at 112, 107 S. Ct. at 1032.[2] A similarly-divided Court revisited the stream of commerce theory in J. McIntyre Mach., Ltd. v. Nicastro , 564 U.S. 873, 882-85, 131 S. Ct. 2780, 2788-90, 180 L.Ed.2d 765 (2011) (plurality), where Justice Kennedy, writing for a plurality, adopted Justice O'Connor's stream of commerce plus approach. According to the stream of commerce plus theory, a defendant's mere awareness that its product may enter the forum state is not enough to demonstrate purposeful availment; the defendant must also engage in some additional conduct establishing its intent or purpose to serve the forum state's market. Asahi , 480 U.S. at 112, 107 S. Ct. at 1032.
¶16 We leaned towards Justice O'Conner's "stream of commerce plus" theory in Bunch v. Lancair Int'l, Inc. , when we reasoned that a defendant must do more than place a product into the stream of commerce in order to purposefully avail itself of the privilege of conducting activities in Montana. Bunch , ¶¶ 24, 28, 30, 55 (quoting Asahi , 480 U.S. at 112, 107 S. Ct. at 1032, for the proposition that ***488 "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State").
¶17 Applying the more stringent "stream of commerce plus" theory, we conclude Ford purposefully availed itself of the privilege of conducting activities in Montana. Ford delivers its vehicles and parts into the stream of commerce with the expectation that Montana consumers will purchase them. Further, Ford engages in additional conduct establishing its intent to serve the market in Montana. Ford advertises in Montana, is registered to do business in Montana, and operates subsidiary companies in Montana. Ford has thirty-six dealerships in Montana. Ford also has employees in Montana. It sells automobiles, specifically Ford Explorers-the kind of vehicle at issue in this case-and parts in Montana. Ford also provides automotive services in Montana, including certified repair, replacement, and recall services. Ford's conduct clearly establishes channels that permit it to provide regular assistance and advice to customers in Montana; Ford serves the market in Montana and expects consumers to drive its automobiles in Montana. Ford's conduct satisfies the more-stringent stream of commerce plus theory, and we accordingly find it purposefully availed itself of the privilege of conducting activities in Montana, thereby invoking Montana's laws.
¶18 Second, we consider whether Lucero's claims arise out of or relate to Ford's forum-related activities. The Supreme Court recently clarified the mandatory nature of this prong. Due process requires a *415 connection between a defendant's in-state actions and a plaintiff's claim: "the suit must arise out of or relate to the defendant's contacts with the forum." Bristol-Myers , 582 U.S. at ----, 137 S. Ct. at 1780 (internal quotations and alterations omitted). Ford argues that, because it did not design or manufacture the Explorer at issue in Montana and because Ford first sold the Explorer outside of Montana, Lucero's claims do not arise out of or relate to any of Ford's Montana activities. Ford's position is supported by courts in other jurisdictions finding no specific personal jurisdiction in similar factual scenarios because of a lack of connection between the plaintiffs' claims and the defendants' in-state contacts.[3] Lucero counters, urging us to find the ***489 second due-process consideration satisfied because the claims relate to Ford's in-state activities. Lucero's position is also supported by courts in other jurisdictions finding due process satisfied in similar factual scenarios as long as a defendant has some other connection to the forum state and could have reasonably foreseen its product being used there.[4] For the following reasons, we agree with Lucero and conclude the second prong is satisfied here: Lucero's claims relate to Ford's Montana activities.
¶19 In a products liability action where the defendant purposefully availed itself of the privilege of doing business in Montana based on the stream of commerce plus theory, the question of whether the plaintiff's claims arise out of or relate to the defendant's ***490 forum-related activities presents a challenging legal inquiry. The defendant's out-of-state conduct-placing the product into the stream of commerce-technically led to the plaintiff's in-state use of the product and resulting claim. In that sense, the defendant's forum-related activities did not directly result in the plaintiff's use of the product in that forum. However, due process does not require a direct connection; it only requires that the plaintiff's claims "arise out of" or "relate to" the defendant's forum-related activities. Therefore, we must determine when the plaintiff's claims "arise out of" or "relate *416 to" the defendant's Montana-related activities when the defendant purposefully availed itself of the privilege of conducting activities in Montana based on the stream of commerce plus theory.
¶20 "[I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury ...." World-Wide Volkswagen , 444 U.S. at 298, 100 S. Ct. at 567 (emphasis added); see also Walden , 571 U.S. at 290, 134 S. Ct. at 1125 ("[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Where a plaintiff alleges a nonresident defendant, acting outside of the forum, placed a product into the stream of commerce that ultimately caused harm in the forum, the "[f]low of a manufacturer's products into the forum ... may bolster an affiliation germane to specific jurisdiction." See Goodyear Dunlop Tires Operations, S.A. v. Brown , 564 U.S. 915, 927, 131 S. Ct. 2846, 2855, 180 L.Ed.2d 796 (2011). Therefore, when the defendant purposefully avails itself of the privilege of conducting activities in a specific forum by placing a product into the stream of commerce, the plaintiff's claims will relate to the defendant's forum-related activities as long as the connection between the defendant's in-state conduct and the plaintiff's claim is sufficient enough to not offend due process.
¶21 At its core, due process is concerned with fairness and reasonableness: Is it fair and reasonable to ask an out-of-state defendant to defend a specific lawsuit in Montana? Companies build vehicles specifically for interstate travel. Irrespective of where a company initially designed, manufactured, or first sold a vehicle, it is fair to say that a company designing, manufacturing, and selling vehicles can reasonably foresee (even expect) its vehicles to cross state lines. When a company engages in the design, manufacture, and distribution of products specifically designed for interstate travel, it is ***491 both fair and reasonable to require the company to defend a lawsuit in a state where the product caused injury as long as the company has otherwise purposefully availed itself of the privilege of doing business in that state and if a nexus exists between the product and the defendant's in-state activity. Where a company first designed, manufactured, or sold a vehicle is immaterial to the personal jurisdiction inquiry, and focusing on those limited factors would unduly restrict courts of this state from exercising specific personal jurisdiction that comports with due process over nonresident defendants in cases such as this one.
¶22 Accordingly, we now hold that if a defendant's actions resulted in the accrual of a tort action in Montana (that is, if M. R. Civ. P. 4(b)(1)(B) is satisfied), and if the defendant purposefully availed itself of the privilege of conducting activities in Montana under the stream of commerce plus theory, the plaintiff's claims "relate to" the defendant's forum-related activities if a nexus exists between the product and the defendant's in-state activity and if the defendant could have reasonably foreseen its product being used in Montana. In this case, M. R. Civ. P. 4(b)(1)(B) is satisfied and Ford purposefully availed itself of the privilege of conducing activities in Montana under the stream of commerce plus theory. Therefore, Lucero's claims "relate to" Ford's Montana activities if a nexus exists between the Explorer and Ford's Montana activities and if Ford could have reasonably foreseen the Explorer being used in Montana.
¶23 A nexus exists between Gullett's use of the Explorer and Ford's in-state activity. Ford advertises, sells, and services vehicles in Montana. Ford makes it convenient for Montana residents to drive Ford vehicles by offering maintenance, repair, and recall services in Montana. Gullett's use of the Explorer in Montana is tied to Ford's activities of selling, maintaining, and repairing vehicles in Montana. Further, Ford could have reasonably foreseen the Explorer-a product specifically built to travel-being used in Montana. We accordingly conclude that Lucero's claims "relate to" Ford's Montana activities.
*417 ¶24 Ford cites recent Supreme Court opinions Bristol-Myers and Walden , reasoning they support its argument that Lucero's claims do not arise out of or relate to its forum-related activities because it did not design, manufacture, or first sell the Explorer in Montana. Those cases, however, do not limit the specific personal jurisdiction analysis in the way Ford argues.
¶25 In Bristol-Myers , plaintiffs filed a products liability action against Bristol-Myers in California state court, alleging they were injured by the pharmaceutical company's drug Plavix.
***492 Bristol-Myers , 582 U.S. at ----, 137 S. Ct. at 1778. Over 600 plaintiffs participated in the action: 86 plaintiffs alleged Plavix injured them in California, while 592 plaintiffs alleged Plavix injured them in other states. Bristol-Myers , 582 U.S. at ----, 137 S. Ct. at 1778. Bristol-Myers challenged the California court's jurisdiction over the claims arising from the out-of-state injuries. Notably, the court's jurisdiction over the claims arising from the in-state injuries was not at issue. The Supreme Court ultimately held the California state court could not exercise specific personal jurisdiction over the claims arising from out-of-state injuries because the plaintiffs bringing those claims "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." Bristol-Myers , 582 U.S. at ---, 137 S. Ct. at 1781. This case is distinguishable. Gullett was injured while driving the Explorer in Montana. Therefore, while Bristol-Myers did not have sufficient California contacts regarding the claims arising from out-of-state injuries, the Court's holding from Bristol-Myers does not impact our analysis regarding whether Lucero's claims relate to Ford's Montana contacts because Gullett was injured while driving the Explorer in Montana.
¶26 In Walden , a police officer seized a large sum of cash from airline passengers at an airport in Georgia, believing the cash was connected to drug-related activity. Walden , 571 U.S. at 279, 134 S. Ct. at 1119. The passengers filed suit in Nevada. The Supreme Court ultimately held the officer was not subject to personal jurisdiction in Nevada because he lacked any connection to the state. The Court recognized that in order for personal jurisdiction to comport with due process, the "defendant's suit-related conduct must create a substantial connection with the forum State" and the "relationship must arise out of contacts that the 'defendant himself' creates with the forum State." Walden , 571 U.S. at 284, 134 S. Ct. at 1121-22 (quoting Burger King Corp. v. Rudzewicz , 471 U.S. 462, 475, 105 S. Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) ). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Walden , 571 U.S. at 285, 134 S. Ct. at 1122. The Court reiterated that the specific personal jurisdiction analysis must focus on the "relationship among the defendant, the forum, and the litigation." Walden , 571 U.S. at 291, 134 S. Ct. at 1126.
¶27 This case presents a much different factual scenario. Unlike in Walden , where the plaintiffs were the only connection between the defendant and the forum state, here, Gullett is by no means the only ***493 connection between Ford and Montana. Rather, Ford's own actions link its Montana contacts to Lucero's claims. Ford markets, sells, and services vehicles in Montana, demonstrating a willingness to sell to and serve Montana customers like Gullett, who was injured while driving an Explorer in Montana. Focusing on the relationship between the defendant (Ford), the forum (Montana), and the litigation (Lucero's design defect, failure to warn, and negligence claims arising from a vehicle accident that occurred in Montana), we conclude Lucero's claims relate to Ford's in-state activities.
¶28 Third in our due process analysis, we consider whether the exercise of personal jurisdiction is reasonable. After finding that a defendant purposefully availed itself of the privilege of conducting activities, we presume that the exercise of personal jurisdiction is reasonable. A defendant can only overcome that presumption by presenting a compelling case that exercising jurisdiction would be unreasonable. B.T. Metal Works , ¶ 34. Because we found that Ford purposefully *418 availed itself of conducting activities in Montana under the stream of commerce plus theory, we presume that exercising personal jurisdiction is reasonable unless Ford can overcome that presumption by presenting a compelling case that jurisdiction would be unreasonable.
¶29 The reasonableness analysis generally depends on an examination of factors that illustrate the concept of fundamental fairness, such as: (1) the extent of the defendant's purposeful interjection into Montana; (2) the burden on the defendant of defending in Montana; (3) the extent of conflict with the sovereignty of the defendant's state; (4) Montana's interest in adjudicating the dispute; (5) the most efficient resolution of the controversy; (6) the importance of Montana to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Simmons Oil Corp. v. Holly Corp. , 244 Mont. 75, 87-88, 796 P.2d 189, 196-97 (1990) ; see also World-Wide Volkswagen , 444 U.S. at 292, 100 S. Ct. at 564-65.
¶30 Applying those factors to this case, we conclude Ford has failed to present a compelling case that exercising jurisdiction over it would be unreasonable: (1) Ford's purposeful interjections into Montana are extensive; (2) Ford did not represent that it is burdened by defending in Montana; (3) Ford did not point out any conflicts between Montana and its home states; (4) Montana has a strong interest in adjudicating the dispute, considering the fact that the accident involved a Montana resident and occurred on Montana roadways; (5) the controversy may be efficiently resolved in Montana, as it was the place of the accident; (6) Montana's court system is important to Lucero's interest in ***494 convenient and effective relief; and (7) while alternative forums exist where Ford would be subject to general personal jurisdiction, those forums are less convenient considering the fact that the accident occurred in Montana. Ford has failed to overcome our presumption that exercising jurisdiction is reasonable. The third due process factor is satisfied.
CONCLUSION
¶31 We accept Ford's petition for supervisory control. This case regarding personal jurisdiction presents urgent factors making the normal appeal process inadequate. The issue presented is purely legal and of state-wide constitutional importance. We agree with the District Court's determination that a Montana court may exercise specific personal jurisdiction over Ford regarding Lucero's design defect, failure to warn, and negligence claims.
IT IS THEREFORE ORDERED Ford's Petition for a Writ of Supervisory Control is GRANTED and the District Court's order denying Ford's motion to dismiss for lack of personal jurisdiction is AFFIRMED.
The Clerk is directed to forward a copy of this Opinion and Order to all counsel of record in the Eighth Judicial District Court Cause No. ADV-18-247(b), and to the Honorable Elizabeth Best, presiding District Judge.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.

Ford selectively quotes from our prior case law in Tackett and Milky Whey to support its contention that its conduct here does not satisfy subsection (b)(1)(B) of Montana's long-arm statute. See Tackett , ¶ 31 (accrual turns "on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced ... their injuries"), ¶ 34 ("[N]o part of [the defendant's] course of conduct forming the basis of [the plaintiff's] claims occurred in Montana."), ¶ 35 ("Mere injury to a forum resident is not a sufficient connection to the forum, however."); Milky Whey , ¶ 24 ("[A] tort does not accrue in Montana when all acts giving rise to the claims occur in another state.").
Those cases, however, are factually distinguishable-Tackett involved a monetary dispute where the only connection to Montana was a party's transfer of funds from his Montana bank account, and Milky Whey involved a dispute over the delivery of a product where the product never physically entered Montana. See Tackett , ¶ 24 ; Milky Whey , ¶¶ 22-24. In this case, the tort undoubtedly accrued in Montana: the accident occurred while Gullett was driving on a Montana roadway. Lucero's claims of design defect, failing to warn, and negligence against Ford, if proven, resulted in the accrual of a tort in Montana and, accordingly, M. R. Civ. P. 4(b)(1)(B) is satisfied in this case.

Justice Brennan, also writing for four justices in Asahi , rejected the stream of commerce plus approach, instead supporting a less-demanding test: a defendant participating in "the regular and anticipated flow of products from manufacture to distribution to retail sale" is properly subject to jurisdiction so long as the defendant is "aware that the final product is being marketed in the forum State." Asahi , 480 U.S. at 117, 107 S. Ct. at 1034 (Brennan, J., concurring in part and concurring in judgment). Justice Stevens, joined by two justices, stated that, instead of considering the defendant's awareness that a component could find its way into the forum state, the court should evaluate "the volume, the value, and the hazardous character" of the defendant's product to determine purposeful availment. Asahi , 480 U.S. at 122, 107 S. Ct. at 1037 (Stevens, J., concurring in part and concurring in judgment).

See, e.g. , Sullivan v. Ford Motor Co. , No. 16-cv-03505-JST, 2016 WL 6520174, at *3 (N.D. Cal. 2016) (finding no specific personal jurisdiction over Ford in California where the plaintiff was injured in California but Ford manufactured and first sold the vehicle outside of the state because there was "every reason to think that [plaintiff's] injury would have occurred regardless of Ford's contacts with California"); Erwin v. Ford Motor Co. , No. 8:16-cv-01322-T-24 AEP, 2016 WL 7655398, at *7 (M.D. Fla. 2016) (finding no specific personal jurisdiction over Ford in Florida where the accident occurred in Florida but where Ford first sold the vehicle outside of the state because the plaintiff's injuries would have occurred regardless of whether or not Ford had contacts with Florida); Pitts v. Ford Motor Co. , 127 F. Supp. 3d 676, 686 (S.D. Miss. 2015) (finding no specific personal jurisdiction over Ford in Mississippi where the plaintiffs purchased their vehicle in Texas and crashed in Mississippi because there was no "meaningful connection" between the claims and Ford's Mississippi contacts).

See, e.g. , Bandemer v. Ford Motor Co. , 913 N.W.2d 710, 716-17 (Minn. Ct. App. 2018) (concluding plaintiff's injury was connected to Ford's Minnesota contacts because Ford initiated contacts with Minnesota and actively sought out business through marketing in the state-Ford "should have reasonably anticipated being haled into court in Minnesota"); Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy , 508 S.W.3d 569, 583-84 (Tex. Ct. App. 2016) (concluding there was a sufficient nexus between the plaintiff's claims and Texas because the defendant was engaged in the business of selling the product in Texas-the fact that the particular product at issue went through a distributor in another state was immaterial to the analysis); Thomas v. Ford Motor Co. , 289 F. Supp. 3d 941, 948 (E.D. Wis. 2017) (finding a connection between the plaintiffs' claims because Ford could have reasonably foreseen that it would be subject to suit in Wisconsin based on its willingness to serve and sell to Wisconsin consumers, its pervasive marketing platforms, and its accrual of benefits from Wisconsin consumers buying its products); Antonini v. Ford Motor Co. , 2017 WL 3633287, *3-4, 2017 U.S. Dist. LEXIS 135247, *8-9 (M.D. Penn. 2017) (holding that, because plaintiff testified that she would not have purchased the vehicle had she not seen Ford's advertisements touting the safety of Ford's vehicles, Ford established a reasonably foreseeable connection with Pennsylvania by enticing Pennsylvanians to buy and drive Ford vehicles); Tarver v. Ford Motor Co. , 2016 WL 7077045, *5-6, 2016 U.S. Dist. LEXIS 167363, *15-16 (W.D. Okla. 2016) (finding a nexus between plaintiffs' claims and Oklahoma because Ford's contacts with Oklahoma-advertising, maintaining dealerships, and providing regular service and product information to Oklahoma consumers through its dealerships-combined with the fact that Ford manufacturers products specifically meant for interstate travel, established a sufficient connection).